UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

              Plaintiff,          NO. 17-CR-20274

v.

                              HON. BERNARD A. FRIEDMAN

D-1 JUMANA NAGARWALA,
D-2 FAKHRUDDIN ATTAR,
D-3 FARIDA ATTAR,
D-4 TAHERA SHAFIQ,
D-5 FARIDA ARIF,
D-6 FATEMA DAHODWALA,

              Defendants.
_____/


MOTION FOR REVOCATION OF DETENTION ORDER

Detroit, Michigan – Wednesday, July 19, 2017


Appearances:

Sara D. Woodward
Malisa Dubal
United States Attorney's Office
211 W. Fort, Suite 2001
Detroit, MI 48226
(313) 226-9180
Email: sara.woodward@usdoj.gov
On behalf of Plaintiff

Shannon M. Smith
The Law Offices of Shannon M. Smith, P.C.
1668 South Telegraph Rd, Suite 140
Bloomfield Hills, MI 48302
248-636-2595
Email: attorneyshannon@gmail.com
On behalf of Defendant Nagarwala


–   –   –


Suzanne Jacques, Official Court Reporter
email: jacques@transcriptorders.com

Motion for Revocation of Detention Order
Wednesday, July 19, 2017

APPEARANCES(Continued):

Mary Chartier-Mittendorf
1905 Abbot Road, Suite 1
East Lansing, MI 48823
517-885-3305
Email: mary@cndefenders.com
On behalf of D-2 Fakhruddin Attar

Matthew R. Newburg
Newburg Law, PLLC
4112 W. St. Joe Highway
Suite C
Lansing, MI 48917
517-505-2323
Email: matt@newburglaw.com
On behalf of D-3 Farida Attar

-    -    -

Motion for Revocation of Detention Order
Wednesday, July 19, 2017

# I N D E X

– – –

<u>Proceeding</u>                                                         <u>Page</u>

Motion for Revocation of Detention Order

   Argument by Ms. Smith                                    5

   Response by Ms. Woodward                                 10

   Ruling of the Court                                     17

   Comments by Ms. Smith                                   20


Conference Re: Discovery                                    24


Certificate of Court Reporter                               37

Case No. 17-CR-20274-01

Motion for Revocation of Detention Order
Wednesday, July 19, 2017

1          Detroit, Michigan

2          Wednesday, July 19, 2017

3          11:03 a.m.

4                    –     –     –

5          LAW CLERK:  Calling case number 17-20274, United

6   States of America vs. Nagarwala.

7          THE COURT:  May we have appearances, starting

8   with the government, please?

9          MS. WOODWARD:  Good morning, Your Honor,

10  Sara Woodward and Malisa Dubal on behalf of the United

11  States.  With us at counsel table is Special Agent Kevin

12  Swanson with the FBI, and Special Agent Lisa Keith from the

13  Department of Homeland Security.

14         THE COURT:  Okay.  Thank you.  Counsel, how are

15  you today?

16         MS. SMITH:  Fine, thank you.  How are you?

17         THE COURT:  Good.

18         MS. SMITH:  My name is Shannon Smith, and I

19  represent Dr. Jumana Nagarwala, who is to my right.

20         MS. CHARTIER:  Good morning, Your Honor, Mary

21  Chartier on behalf of Dr. Fakhruddin Attar.

22         MS. DUBAL:  Good morning, Your Honor, Matt

23  Newburg on behalf of Farida Attar, who is also to my right.

24         THE COURT:  Okay.  You may all be seated.

25         Let the record reflect that today is the date

Motion for Revocation of Detention Order
Wednesday, July 19, 2017

1   and time scheduled for a hearing, a motion for revocation of

2   detention order.  The Court has had an opportunity to read

3   the motion, have had an opportunity to read the government's

4   response to the motion, and I've had an opportunity to read

5   the reply to the government's motion, and the response to

6   defendant's motion.

7            I also have a copy of the pretrial service

8   report that was generated in this particular matter.

9            Starting with the government, is there anything

10   else I should have before me that I do not have?

11            MS. WOODWARD:  No, Your Honor.

12            THE COURT:  And the defense?

13            MS. SMITH:  No, Your Honor.

14            THE COURT:  Okay.  This is the defense motion.

15   You may proceed, counsel.

16            MS. SMITH:  Are you okay if I stay at the table,

17   Your Honor?

18            THE COURT:  Wherever you feel the most

19   comfortable is fine.

20            MS. SMITH:  Thank you, Judge.

21            Your Honor, the presumption of innocence, the

22   facts of this case, the statutory requirements, mandate that

23   Dr. Nagarwala be released, like every other defendant who is

24   indicted in this case.  While there is a considerable

25   factual dispute about what took place and what happened in

Motion for Revocation of Detention Order
Wednesday, July 19, 2017

 1  this case, those are issues for trial, and only, in part, to

 2  assess the danger that Dr. Nagarwala presents to the

 3  community.

 4          Even in the materials that the government

 5  provided this Court in Exhibit A of their materials, one of

 6  the articles shows that there is little consensus about how

 7  the actual procedure is supposed work among the Dawoodi

 8  Bohra people who practice this procedure.  I will not

 9  belabor the Court with the facts of this case, as those will

10  be relevant issues at trial and in future hearings, but

11  there is certainly a dispute over the facts of the case that

12  will be coming forward in future litigation.

13          With respect to this case, this is about far

14  more than just Dr. Jumana Nagarwala.  The community that

15  Dr. Nagarwala is from is supporting her in this matter, as

16  the Court can see from the number of community members in

17  the audience.

18          Dr. Nagarwala intends to fight this case because

19  it is a fight about a religious practice that is sacred to

20  not only her but also her entire community, the entire

21  religion, and it will have impact on this community

22  throughout the world.

23          Dr. Nagarwala is not intending to let any one of

24  her community members down by fleeing or not fighting this

25  case.

Motion for Revocation of Detention Order
Wednesday, July 19, 2017

1     When the Court has to consider whether Jumana

2  Nagarwala poses a risk of flight, not only did Dr. Nagarwala

3  tell the government of her plans to leave the country at the

4  initial meeting in this investigation, it was the first

5  thing she said on a wiretap phone call between herself and

6  the forensic interviewer who was interviewing her daughter.

7     Dr. Nagarwala got on the phone and said, I need

8  to talk to you today because I have travel plans to leave

9  the country, and if I don't talk to you today, it's not

10 going to be until the 15th when I return.  They asked for

11 the specifics of all of her travel arrangements, she told

12 them all of the travel arrangements and made a point to set

13 up an appointment at her home later that day to be sure she

14 could begin cooperating in this investigation.

15     Further, because there is wiretap information in

16 this case, I have listened to April 10th through the

17 following days where Dr. Nagarwala was aware of the

18 investigation.  I will state for the record that she is not

19 a seasoned criminal, and her calls are open, and the

20 discussions on those calls provide a lot of information, but

21 there is not one point where Dr. Nagarwala, in communicating

22 with any of the community members, close family members, her

23 husband, not one time does Dr. Nagarwala say, I'm getting on

24 that flight to Kenya and I will not be coming back.  Not

25 once does she ask somebody overseas, can I stay with you

Motion for Revocation of Detention Order
Wednesday, July 19, 2017

1    once I get to Kenya?

2            There is absolutely no evidence that Dr.

3    Nagarwala posed a risk of flight, and based on the

4    importance of this case to her and this entire community,

5    she will not flee the country, and adequate protections can

6    be made to be sure of that.

7            While the Court is not required to consider the

8    amount of discovery, or discovery issues, or the length of

9    time this case will take, I do think it's an important

10   consideration for the Court to make, and the reason is

11   because I have received thousands of files, much of which

12   are in another language that myself and no person in my

13   office can understand.  My client is going to have to go

14   through approximately 16,000 files and help me understand

15   what they are about.

16           If you spend a minute on each of those files, it

17   would take 233 hours just to listen to those files and

18   determine what they are.  That's a substantial amount of

19   time I will need to spend with my client to go through those

20   materials.

21           Additionally, there were wiretap calls for days

22   that are in part English and in part a foreign language.

23   The government has provided no transcripts, no information

24   about the specifics of what they believe those calls

25   include.  I will also have to spend hours with my client

Motion for Revocation of Detention Order
Wednesday, July 19, 2017

 1   preparing for those materials.

 2          As my pleadings indicate, I have received

 3   absolutely no discovery from the government with respect to

 4   the medical records of even the first two alleged victims

 5   who were from April of this year.  We have asked, as the

 6   defense team, repeatedly, for the records.  We have been met

 7   with, next week, I'm getting those to you.  For that reason,

 8   we have not filed a motion yet.  However, it has become

 9   clear this is going to be a discovery fight.

10          We were also told, with respect to the

11   discovery, that the government is treating some of the

12   photographs as if they were child pornography.  That is

13   going to require some additional fights in this court

14   because they are not and should not be considered like child

15   pornography.

16          In addition to that, we were provided a wiretap

17   affidavit that's approximately 70 pages long, and we were

18   thankful to receive something in the way of discovery, but

19   page after page of redacted information leaves us unable to

20   assess the probable cause elements in this case, and I'm

21   literally going page after page.

22          This is the example of the information the

23   government has that they are not giving to us that are going

24   to create serious discovery issues that we will be

25   litigating before this Court.  That will prolong the

Case No. 17-CR-20274-01

Motion for Revocation of Detention Order
Wednesday, July 19, 2017

 1    litigation, in addition to the fact that we believe other

 2    defendants will be added through superseding indictments.

 3              This case, the facts of it, involved parents who

 4    brought their children Dr. Nagarwala for a procedure, a

 5    procedure that's been highly disputed back and forth.

 6    Dr. Nagarwala does not pose a danger to the community in the

 7    way that some defendants do.  She was not out, randomly

 8    attacking people, doing anything of the sort.  There are

 9    sufficient pretrial conditions that can be given to

10    Dr. Nagarwala.  She is no longer working as a medical

11    doctor.  She will no longer be at the Burhani Clinic, as it

12    no longer exists.  Dr. Nagarwala is amenable to having no

13    contact with community members, with the exception of her

14    husband and close family members, her children.

15              So, Your Honor, we would ask that this Court

16    allow pretrial release, with conditions similar to those

17    that have been placed on the Attars.

18              Thank you.

19              THE COURT:  Thank you.

20              Government.

21    (11:13 a.m.)

22              MS. WOODWARD:  Good morning, Your Honor.

23              As the Court is aware, the defendant has filed a

24    motion for bond, and the Court's indicated that you have

25    received our response under seal.  The briefing in this case

Motion for Revocation of Detention Order
Wednesday, July 19, 2017

1  has been extensive, and I know that the Court is familiar

2  with the facts contained in the pleadings, within the

3  Pretrial Services report, the superseding indictment, as

4  well as the briefs of the parties.

5        That briefing, as well as Ms. Smith's argument

6  today, does raise many, many issues.  Obviously, there are

7  some discovery disputes, and there is also a dispute over

8  the nature of the procedure performed by Dr. Nagarwala, and

9  those issues, while important, are not something that the

10 Court needs to resolve today.

11       As far as discovery goes, we will continue to

12 work with Ms. Smith and the other defense attorneys in this

13 case to resolve our issues and fully comply with our

14 discovery obligations, of which we are aware, and trial in

15 this case will be the ultimate determination of the facts

16 here, and what happened to the victims in this case.

17       The question for the Court today is somewhat

18 simpler, yet extremely important to both the defendant and

19 the government, and that question is whether the defendant

20 will be released on bond or remain detained pending trial.

21       It is the government's strong position that

22 there are simply no conditions that can reasonably assure

23 the safety of the community, because for 12 years, the

24 defendant, a highly trained medical doctor, cut the genitals

25 of countless 7-year-old girls.  This was not only medically

Motion for Revocation of Detention Order
Wednesday, July 19, 2017

 1    unnecessary, but it also caused permanent alteration and

 2    damage to the genitals of these victims.  And importantly,

 3    the defendant was aware that this violation was a violation

 4    of her oath as a doctor and also illegal, but she continued

 5    to do it anyway, and her conduct demonstrates that there is

 6    no way for the Court or Pretrial Services to ensure that she

 7    will stop committing this crime and that she will not cut

 8    another child.

 9              Of course, the motion for bond here is governed

10    by the four factors enumerated in the Bail Reform Act, and

11    this is a presumption case.  There is a rebuttable

12    presumption in favor of detention due to one of the crimes

13    that the defendant is charged with.

14              The first factor for the Court to consider is

15    the nature and seriousness of the offense.  She is charged

16    with FGM-related crimes, conspiracy to engage in FGM(female

17    genital mutilation), substantive counts of FGM for four

18    minor victims, as well as conspiracy to transport a minor

19    with intent to engage in criminal sexual activity.

20              Female genital mutilation itself, and the crimes

21    related to FGM, is an extremely serious crime.  It involves

22    harm to minor victims, which is a factor for the Court to

23    consider, and in my brief, I set out some of the background

24    about FGM.

25              But even putting aside the literature on FGM,

Motion for Revocation of Detention Order
Wednesday, July 19, 2017

1   what we know about the facts in this case are that for

2   approximately 12 years, this defendant, a medical doctor,

3   saw young girls at Dr. Attar's clinic.  There's no dispute

4   that when she saw them she would pull down their pants and

5   perform a procedure on their genitals.  This is clearly not

6   a medical procedure, she did not bill or keep any records of

7   these procedures.  From the medical evidence and the victim

8   disclosures, we know that this procedure involved cutting

9   and loss of blood.  The genitals of Dr. Nagarwala's victims

10  were, as a result, permanently altered.  She may contend

11  that what she did was something else, although we're unclear

12  on what it is she contends that she did.

13          But the mere touching of the genitals of a young

14  girl for no medical purpose in itself would be a violation

15  of the law.  She was not doing this as a medical doctor.

16  But what we have here is so much worse than merely touching

17  their genitals.  She cut her victims severely.  And the

18  medical evidence here is discussed in the government's

19  brief, and as the Court knows, for some victims, the

20  alterations to the victims' genitals were dramatic and

21  terrible, and I draw the Court's attention to the medical

22  results for Minor Victim 4 discussed in our brief.

23          And the defendant also drew victims to Michigan

24  from other states, from around the country.  She's charged

25  with the FGM procedure for the two victims from Minnesota,

Motion for Revocation of Detention Order
Wednesday, July 19, 2017

 1   but there are others that came here from around the country,

 2   and because she was a medical doctor, parents trusted her,

 3   and she encouraged parents to travel here to see her for

 4   this procedure.  And for the Minnesota victims alone, they

 5   would have driven 14 hours to see her at Dr. Attar's clinic.

 6          But Dr. Nagarwala is not only charged with

 7   FGM-related crimes, she's also charged with obstructing an

 8   official -- conspiracy to obstruct an official proceeding,

 9   as well as making a false statement to a federal officer.

10   Both of those crimes are also serious.

11          For the obstruction, what we know is that

12   Dr. Nagarwala talked to Dr. Attar, and together they tried

13   to devise a story to tell the police.  But most importantly,

14   we know that Dr. Nagarwala talked to two parents that

15   brought their children to her for this procedure, and she

16   encouraged both of them not to cooperate with law

17   enforcement, to deny that a procedure had taken place, and

18   to affirmatively make false statements.

19          So the nature and seriousness of this offense,

20   of all of the offenses here, weighs heavily in favor of

21   detention.

22          The next factor the Court considers is the

23   weight of the evidence regarding the defendant's

24   dangerousness and risk of flight.

25          For risk of flight, I think the facts are not in

Motion for Revocation of Detention Order
Wednesday, July 19, 2017

1   dispute.  What we know is that the defendant was boarding an

2   international flight when she was arrested.  That she has an

3   explanation for her travel does not make it less

4   significant.  She has --

5                THE COURT:  The government doesn't deny that

6   they knew that she had prearranged that trip?

7                MS. WOODWARD:  Agreed, yes, we don't deny that

8   she had already made those arrangements.

9                THE COURT:  And that she disclosed it.

10               MS. WOODWARD:  She did disclose them, yes, and

11   that -- but what's significant is that she knew of this

12   investigation, of the Child Protective Services

13   Investigation into her, and she decided to leave anyway.

14               I'm not contending -- well, I guess we don't

15   know whether she was fleeing, we don't know whether she

16   would have come back, but it's important that she does have

17   significant international ties, significant financial

18   resources, and she, in fact, did have international travel

19   plans.  I think that that sets her apart from the Attars

20   here, although, she's set apart from them in the facts of

21   this case, and her conduct, as well.

22               The weight of the evidence with regard to the

23   defendant's dangerousness is also extremely strong.  There

24   is -- there are victim disclosures, multiple victim

25   disclosures, medical evidence, parent disclosures and cell

Motion for Revocation of Detention Order
Wednesday, July 19, 2017

1   phone evidence, and there's also strong evidence that the

2   defendant was not deterred by her knowledge that this was a

3   federal crime, and the evidence of the obstructive behavior

4   is also strong.  And what this comes down to, Your Honor, is

5   that there is simply no way that this Court or Pretrial

6   Services can ensure that this defendant does not engage in

7   another FGM procedure.

8                This procedure, referred to as khatna or khafz

9   can be performed, and often is performed, in a house.  It

10  does not need to be performed in a medical clinic or at the

11  Burhani Medical Clinic.  It takes only a few minutes to

12  complete, and there is simply no way for Pretrial Services

13  to ensure that children are not brought to the defendant for

14  this procedure.

15               The defendant could be ordered not to have

16  contact with children, but unless she is constantly

17  monitored and surveilled and someone is watching her front

18  door, it's impossible to ensure that that would not happen.

19  But what we do know is that the defendant is extremely

20  committed to this practice.  She believes that it's

21  important, she believes it's worth doing even though she

22  knows it's a violation of the law, and, therefore, the risk

23  of harm to children is simply too great, too great for the

24  Court to take on, too great to ask Pretrial Services to

25  monitor.

Motion for Revocation of Detention Order
Wednesday, July 19, 2017

 1              But there's also a risk of continued obstructive

 2    behavior.  There is pressure on parents and children within

 3    this community not to cooperate with law enforcement, and it

 4    is impossible to know exactly who the witnesses to this

 5    conduct are.  It's impossible to know how many children have

 6    been cut by Dr. Nagarwala.  There's literally an endless

 7    list of potential victims and witnesses.  Most female

 8    members of her community may be witnesses in some way, and

 9    there's no way to limit her contact with all potential

10    victims and witnesses.

11              The Court also considers the history and

12    characteristics of the person, and, here, I concede that

13    some of those history and characteristics would weigh in

14    favor of release, but some weigh in favor of detention, and

15    those are, her international family ties, the fact that she

16    is currently unemployed, the fact that she has financial

17    resources that are extensive, and a strong motivation to

18    flee.

19              And I guess I would ask the Court at this time

20    if you have any questions for us based on what you've seen

21    in the pleadings, and everything that's before you.

22              THE COURT:  I have no questions at this time.

23    Anything further that the defense wishes to say?

24              MS. SMITH:  No, Your Honor.  Thank you.

25              THE COURT:  This is a really tough case, to be

Motion for Revocation of Detention Order
Wednesday, July 19, 2017

 1   honest.  Number one, I think the arguments on both sides as

 2   to the facts is not real relevant today for me because I

 3   think there is a presumption of innocence, and the plaintiff

 4   is clothed with that, and that continues all through these

 5   proceedings, and not only today but until such time as the

 6   trier of fact makes a different determination.  So the Court

 7   is burdened with, not burdened with, but certainly has to

 8   take that as a very strong consideration.

 9          Also, the charge itself, it's obviously a

10   different charge that I've never seen one before, I don't

11   think anybody has seen one before, and it does have a

12   penalty that is very severe.  But I think I have to look at

13   this, as I say, at least at this point, the grand jury has

14   issued an indictment, the indictment says that there -- a

15   crime was committed and that there's probable cause that the

16   accused committed that crime.  What the facts are, again,

17   the trier of fact will determine.

18          The nature of the crime in this matter, I think

19   everybody agrees, and I heard it many times from both sides,

20   it is a religious belief that generated that.  Every kind of

21   crime has some kind of motive, and motive is not always the

22   consideration, but here, I don't think anybody disagrees

23   that the motive was a religious motive, and, of course,

24   during the proceedings, I've already been exposed to it in

25   the pleadings, constitutional rights, and so forth, will be

Motion for Revocation of Detention Order
Wednesday, July 19, 2017

 1  discussed.

 2          My main thing is I think we can fashion

 3  something that will protect the public because we can

 4  fashion something that will be able to, in real time, trace

 5  her movements, and so forth.

 6          My big concern in this particular matter is one

 7  of flight, and I understand that she has very strong ties to

 8  the community here in Detroit and to the United States.  She

 9  is well educated, and that should not be held against her,

10  by any means, but this particular case does involve a

11  penalty that's very, very severe, and no matter what one's

12  beliefs may be, it's still a severe penalty that will impact

13  the defendant and will impact, of course, all of those loved

14  ones that she cares about.

15          It's just a very tough, tough decision.  I've

16  been trying to figure out some way of being able to satisfy

17  myself in terms of being able to guarantee, for lack of a

18  better word, no flight, that she will appear when and where

19  directed, and take into consideration that, along with the

20  presumption, and see if there's something that can overcome

21  the presumption, and as I say, I've gone back and forth, and

22  so forth, I've thought about different ways of doing it, and

23  because of the nature of the potential penalty in this

24  particular matter, I'm not so sure that I can come up with a

25  solution that will guarantee her appearance when and where

Motion for Revocation of Detention Order
Wednesday, July 19, 2017

1   directed by the Court.

2            And the community strength and backing is very

3   important, but it's a double-edged sword, because, on the

4   same token, it can be used to argue that perhaps that would

5   be a good source of flight, and so forth.

6            So as of today, I have tried to come up with

7   some way.  I've thought about the GPS, I've thought about,

8   as we've done before, some kind of special housing in terms

9   of, so that there can be some communication.  I think the

10   assistance of counsel argument is very, very important, and

11   especially in this case where there are some language

12   issues, and other things.

13            As of today, I can't come up, in my mind, with

14   anything that would overcome that presumption at this time.

15   Again, I'm not concerned about the harm to the community.  I

16   think that we can do that very adequately.  I am concerned

17   about the flight, and I just, I think, at this point,

18   because of the presumption, that I have to not grant the

19   motion today.

20            But counsel I'd like to hear if you have

21   something else, that's why I'm here, if there's something

22   else that you can enlighten me on that --

23            MS. SMITH:  Your Honor, I would just like to

24   state for the Court that my client's passport has already

25   been surrendered, that the passports of her two minor

Motion for Revocation of Detention Order
Wednesday, July 19, 2017

 1   children have already been surrendered in the Child

 2   Protective Services matter; that, while Dr. Nagarwala has

 3   international ties, she has far more substantial ties here.

 4   She's not going to leave her children, husband, parents, and

 5   all the loved ones she cares about.

 6              I just would ask the Court to do something

 7   similar to what was done for the Attars.  She could be

 8   placed on a GPS tether, not allowed to leave even a room, a

 9   hotel room, or her house, she would not be able to leave

10   without them being able to track where she is going.  And so

11   I do believe there's conditions that can be put in place to

12   make sure she stays put.  And she will stay put, especially

13   without a passport or any means to be able to secure those

14   things.

15              I don't see that she's in any different

16   position, really, than the Attars, and so --

17              THE COURT:  The difference in position, to be

18   honest with you, and I've thought about this ever since you

19   filed your motion, and the difference is that she is going

20   to be subject to a much more severe penalty, number one.

21   Number two is that, in terms of -- again, I don't know the

22   facts, and I'm not here to discuss the facts, but at least

23   as to the involvement, we know that hers was a different

24   kind of involvement than the other defendants, and the only

25   reason that has any significance is because those kinds of

Motion for Revocation of Detention Order
Wednesday, July 19, 2017

1    things go towards the penalty or the imposition of sentence,

2    and therefore she is facing a much more severe sentence,

3    and, therefore -- and again, I'm not saying she would do

4    this, but she certainly has the -- she's in a different

5    position in making a decision whether or not she should flee

6    or not flee, than the others are in this case.

7              And I'm not suggesting that she would make that

8    decision, I'm suggesting that I know, and I've seen it

9    before, that you don't need travel documents to get out of

10   this country.  You can get out of this country without

11   travel documents, and so forth.

12             MS. SMITH:  I do want to clear it up for the

13   record that Dr. Attar faces the same presumption

14   Dr. Nagarwala does.  They are both charged with traveling

15   with intent to commit a sexual act.

16             THE COURT:  I understand.

17             MS. SMITH:  That crime, when you look at the

18   Mann Act and the prodigy of the Mann Act and everything

19   that's come before, it's not the right crime to charge

20   either one of these defendants with.  So she really is not

21   in a much different position from Dr. Attar in terms of the

22   charges, the penalty she faces, and also that same argument

23   that Ms. Chartier put together the last time we were in

24   court about how that life offense is not even really the

25   appropriate charge, and it's something we intend to file a

Case No. 17-CR-20274-01

Motion for Revocation of Detention Order
Wednesday, July 19, 2017

 1  motion on.

 2          THE COURT:  I can't get into that because I

 3  don't know, and I would not want to make a factual

 4  determination.  All I know is that the grand jury made a

 5  determination that that was the charge, and that they had --

 6  if they had done their job, which I assume they did, that

 7  they made that determination, and that they made -- and that

 8  that crime had been committed and that there's probable

 9  cause to believe that the accused committed it.

10          So I have to take that, at least that, because I

11  haven't heard any testimony, and I don't want to make any

12  findings of fact, but at this point, and I'm not saying

13  that -- as I say, I think with the presumption of innocence,

14  I'm trying to weigh her right to presumption of innocence

15  with the right of society to make sure that she doesn't

16  flee.  I haven't been able to come up with something that

17  would convince me that the presumption has been overcome.

18          And I understand.  I've been thinking about GPS,

19  I've been thinking about, you know, some custodial, and also

20  thinking about your client.  I think she's well trained,

21  she's a citizen, she was born here, her kids are here, her

22  mother-in-law is here, and so forth.  That would be a lot to

23  leave, but it's also, in terms of the incentive to leave,

24  the penalty is so great that there is a large incentive to

25  leave at this point.  That does not overcome the

Conference Re: Discovery
July 19, 2017

1    presumption.

2              So at this point, I'm going to deny the motion,

3    and I say at this point because, certainly, I would be more

4    than happy to look at it again if there's some things that

5    change, or if there's some situations that maybe more

6    assurances could be given and I can be convinced that the

7    presumption perhaps can be overcome.  But as I say, my

8    concern is only that the issue of appearing when and where

9    directed, I don't think -- I think we can do a lot in terms

10   of making sure that the community is protected.

11             So as of today, I'm going to deny the motion,

12   but I certainly, if you come up with something that perhaps

13   can give us some more assurances, I'd be more than happy to

14   look at it.

15

16             But there's another issue I think we have to

17   talk about also today while we have everybody here, and all

18   the parties.  I'm concerned about discovery, and I'm looking

19   at the government.  I don't think there should be a fight

20   over discovery in this case for a couple reasons.  Number

21   one is, I'll tell you right now, I believe, especially in a

22   case like this, that there has to be some good discovery

23   because otherwise this case will linger on, and on, and on,

24   and it won't be fair to anybody at all.

25             So I can't -- I'm not in a position to make any

1   rulings on discovery; however, just my thought, in terms of

2   the language barrier, if the government is turning over

3   information and it's in a language other than English, and

4   they have a transcript or they have it already interpreted,

5   I'm telling you right now, I'm going to order that any

6   transcripts you have, anything that's already interpreted,

7   to make sure that it goes to the defense because there's no

8   reason that they have to be put to the expense and the time,

9   and everything else, if the government already has it.  And

10  if we ever went to trial in this matter, it's going to be

11  used by the government, and, therefore, we'll save a lot of

12  time in terms of verification and credibility of the

13  interpretation.

14          Again, page after page of redacted, it could be

15  right, it could be wrong, I don't know, and I'm not making a

16  ruling.  However, I think -- and again, there has been some

17  argument today that the government may have other people in

18  mind they want to indict.  I'm urging the government to do

19  it ASAP because we want to move this case.  It's not fair to

20  the defendants, it's not fair to their community, it's not

21  fair to the issue that we don't move this case, and move it

22  along in an appropriate manner so that we can bring it to

23  trial, and to be able to discuss those issues which each

24  side has raised throughout the proceedings so far.

25          And last but not least, please work together in

Conference Re: Discovery
July 19, 2017

1    terms of discovery, and if you have a dispute maybe

2    somewhere down the line, what we'll do is, and, again, talk

3    about it, and so forth, and we'll have discovery hearings

4    every once in awhile so that we can get this thing moving.

5    I don't want to be inundated with paper all the time, and

6    the expense and time of going through it, so if you get to a

7    point where it really is becoming a fight, so to speak, then

8    file a motion, let me know, and then we will talk about some

9    kind of discovery program.

10              Okay.  Anything else that we should talk about

11   today?

12              MS. WOODWARD:  No, Your Honor.  I'll just

13   respond to what you said, and I understand what you're

14   saying, and we will comply with our discovery obligations as

15   you've directed, and as we intend to do.

16              THE COURT:  Okay.

17              MS. WOODWARD:  If there's something we can't

18   resolve, we'll let you know.

19              THE COURT:  Okay.  Discovery obligations -- I

20   appreciate that, and I know your office always does, but

21   your office generally has a broader policy than just

22   obligations.

23              MS. WOODWARD:  Sure.

24              THE COURT:  And I would ask that it carry over

25   to this case, as well.

Conference Re: Discovery
July 19, 2017

1          MS. WOODWARD:  Understood.

2          THE COURT:  Okay.  Counsel.

3          MS. CHARTIER:  Your Honor, it's been three

4    months, and in all due respect, we keep hearing the same

5    thing, that the government will comply with their discovery

6    obligations.  I don't believe they have.

7          They repeatedly have said that we'll get things

8    like medical records, and it's been three months that it's

9    been in their possession and we haven't got it.

10          So is it possible to get a firm date, so then we

11    know if we don't have them, for example, by Friday that we

12    will be filing a discovery motion with the court.  We keep

13    holding back on that because we keep getting assured that

14    they're coming, and they're not coming.  So I don't know if

15    the government is willing to give us that date today, or, if

16    not, we'll just go back and file our discovery motion.

17          THE COURT:  Okay.  Let's talk about one thing,

18    since we have everybody here.  Tell me what's outstanding

19    that you think should have already been provided to you.

20          MS. CHARTIER:  Again, I understand the Jencks

21    Act, and we'd love to get that, and we certainly hope we get

22    that in advance of trial.  But medical records, we keep

23    hearing --

24          THE COURT:  Let's talk about medical records.

25    When will they receive medical records?

Conference Re: Discovery
July 19, 2017

1          MS. WOODWARD:  I'm happy to respond, Your Honor.

2          As of right now, there are CDs being burned for

3     the defendants.  I need to check them and make sure they're

4     ready to go out today or tomorrow, but those are under way,

5     the medical records.

6          MS. CHARTIER:  So that would be by this week,

7     then?

8          MS. WOODWARD:  Correct.

9          THE COURT:  By Friday.

10          MS. CHARTIER:  There are also videos and

11     photographs of the medical procedures.  Ms. Woodward has

12     indicated they're treating them as child pornography and

13     they will not be turning them over to us.

14          MS. WOODWARD:  That's an unfair

15     characterization.

16          THE COURT:  Okay.  Tell me what your position

17     is.

18          MS. WOODWARD:  My position is these are videos

19     and images of children's genitalia.  They are incredibly

20     sensitive.  That we will make them available to the defense

21     to view as we are required to do, but that we will not be

22     turning over copies of this very sensitive material.

23          I explained to Ms. Chartier that we have a

24     procedure in place to do that, and likened it to child

25     pornography, that I have an obligation to provide to the

Conference Re: Discovery
July 19, 2017

1   defense an opportunity to review, but I do not give out

2   copies.  This is the practice of child abuse pediatricians

3   who I've consulted with, not to turn over these images and

4   videos.

5            THE COURT:  Well, I think that we can do that

6   with the defendants that are out right now.  As to

7   Dr. Nagarwala, how do you suggest -- she has a right to see

8   those also.  How do you suggest that that's accomplished?

9            MS. WOODWARD:  Arrangements can be made for her

10   to view them in the facility.  We do that in child

11   pornography cases when the defendants right have the right

12   to see the evidence.

13            THE COURT:  And you're willing to do that as

14   soon as arrangements can be made, is that correct?

15            MS. WOODWARD:  Yes.

16            Now, those photographs and videos are not

17   currently in my custody.  They're in the custody of the

18   child abuse pediatricians that did the exams, so we need to

19   work with them to come up with a procedure, whether we use a

20   secure, end-to-end encrypted digital way for the defense

21   attorneys to view them in their office, or whether we make

22   them available at the FBI, are the sorts of things I want to

23   discuss with --

24            THE COURT:  Why don't you get together by next

25   Friday so you have an answer to that.  I think it's an

Conference Re: Discovery
July 19, 2017

 1    important consideration as part of their preparation,

 2    especially what they've indicated in their pleadings, that

 3    this would be very important to view.

 4              MS. CHARTIER:  Absolutely, Your Honor.

 5              THE COURT:  If you feel, after viewing it, that

 6    it limits you and that there's some reason that this

 7    particular arrangement would not be acceptable from a

 8    defense standpoint, then you'll let me know.  But at least

 9    try it, work out some arrangement, talk to your doctors,

10    people that you have to talk to so, again, by late Friday

11    you have some arrangement on how to make this thing happen.

12              MS. CHARTIER:  Your Honor, I can tell the Court

13    right now, I've indicated this to Ms. Woodward, the problem

14    with us coming down and viewing them, for example, at the

15    FBI office, is not just related to our clients or

16    Dr. Nagarwala, but it's also related to our experts.  Our

17    experts are potentially all around the country.

18    Ms. Woodward had indicated there may be a way to work around

19    that if we provide information about our experts to the

20    government.  I don't believe that we have to do that.

21              THE COURT:  I don't believe you have to do it.

22              MS. CHARTIER:  I agree.  So that's why we --

23    we're officers of the court.  Even if they are treated akin

24    to child pornography, they're not child pornography.  We

25    signed a protective order, we're not going to be

Conference Re: Discovery
July 19, 2017

1   distributing those photographs and the video, but in terms

2   of preparing a defense for our clients, we need access to

3   that, and we need access to those materials to share with

4   our experts.

5           THE COURT:  Okay.  But not to give to your

6   experts, necessarily.

7           MS. CHARTIER:  They could view them, for

8   example.  I mean, this is no different than any other case.

9   These are medical records, they're not child pornography.

10  The doctor who created them hasn't been charged with child

11  pornography.

12          THE COURT:  But there's a real interest in

13  making sure that they're not disseminated anywhere.  And you

14  are officers of the court, we do have a protective order.  I

15  think both sides can be satisfied.  I think you have no

16  obligation to tell the government who your experts are at

17  this point.

18          I suspect, I hope -- you have to show these

19  things to the expert before you know their opinion, and you

20  certainly don't want to disclose who they are until such

21  time as --

22          MS. CHARTIER:  Correct.

23          THE COURT:  -- as you decide that you may or may

24  not use them as experts, or use them in any capacity you

25  want.

Conference Re: Discovery
July 19, 2017

 1          Number one is, I think you should, by the end of

 2   the week, be able to have the attorneys and the clients be

 3   able to see these first.  Then, if you can't work out some

 4   way, under a protective order of some kind, for the experts

 5   to see them, and I think the suggestion that the use of the

 6   attorney as the vehicle for showing them to the expert

 7   without the expert having a copy, or anything of that

 8   nature, until such time as it's needed, probably is a good

 9   solution.

10          But see if you can work it out.  If not, let me

11   know, file a motion.  As I say, and I'm more than happy to

12   do that.  But err in favor of more information than less.

13   I'm not going to interfere with Jencks or the government's

14   rights, because the government has rights also, very strong

15   rights.  But on the same token, err in favor of the

16   credibility of the lawyers on both sides in this matter

17   being able to exercise their obligation under protective

18   orders, and so forth, and see if you can work it out.  If

19   you can't, let me know.

20          I want to move the case as quickly and rapidly

21   as we can.  It's an issue that has to be decided one way or

22   the other, and it is an issue that I know is of public

23   interest, and should be.  Let's move it as quickly as we

24   can.

25          MS. WOODWARD:  Just to clarify, Judge, you

Conference Re: Discovery
July 19, 2017

1    mentioned by Friday.  I want to be clear on what our

2    obligations are.  So today is Wednesday.  We will have a

3    conversation and attempt to come up with a process for that.

4                THE COURT:  Yeah, maybe Friday is a little soon.

5                MS. WOODWARD:  They can't -- I don't think it

6    would be possible to make them available for them to view by

7    Friday.

8                THE COURT:  No, no, I'm hoping by Friday, you'll

9    sit down, you'll talk about it, you'll work something out,

10   and if you can't, you'll let me know.  And Friday wasn't the

11   deadline to actually turn it over, but, like, the medical

12   records, I mean --

13               MS. WOODWARD:  I understand the medical records

14   were different, and they will have those by Friday.

15               THE COURT:  And I think that the other documents

16   are going to be important to them, too, but that may take a

17   little bit more in terms of how do we do it, how do we show

18   it to, you know, the defense may have to keep a log of who

19   they show it to without disclosing it to the government.

20   And that will protect all the defendants as well as have a

21   log of who they show it to.

22               And the order, the protective order always --

23   has already stated that they can't -- that it's on an

24   as-needed basis, so it's not -- they're going to have to

25   abide by that protective order, too.  I think you can work

Conference Re: Discovery
July 19, 2017

```
 1   it out.  I said Friday, maybe just to put pressure on both
 2   sides to get it done so that we're not back here.
 3              MS. CHARTIER:  Two other issues as it relates to
 4   discovery.  The redaction Ms. Smith showed, pages and pages,
 5   will that also be available Friday, at least partially
 6   unredacted?
 7              MS. WOODWARD:  It's on the same CDs that we're
 8   burning right now.
 9              MS. CHARTIER:  Great.  Thank you.
10              And the final issue, and this may be the subject
11   of speaking with Mr. Hinojosa and the government, and filing
12   a motion, if needed, but Ms. Smith is correct in terms of
13   the number of hours that it will take to go through the
14   phone calls.  Currently, Dr. Attar and Mrs. Attar can't do
15   that without a lawyer present, or someone from my firm,
16   because they can't have access to a computer.
17              So one of the issues is, while we like spending
18   time with them, it's a lot of hours to spend, and it will
19   drag on for months.  If they had access to a computer, even
20   without internet access, they would be able to listen to the
21   phone calls themselves and not have to do it in our office.
22              So I would ask the Court to consider that now.
23   If not, we can see what we can work out, and file a motion
24   if needed.
25              THE COURT:  Pretrial, if we -- if we --
```

Case No. 17-CR-20274-01

Conference Re: Discovery
July 19, 2017

1              Well, a computer that came from your office?

2              MS. CHARTIER:  Yes, with no internet access.

3              THE COURT:  No internet access, and it would be

4    totally erased except for those documents that have been

5    provided to you by the government so that they can listen to

6    it.

7              MS. CHARTIER:  Correct.  The documents are

8    actually on an external hard drive.  So they would have a

9    computer with essentially nothing on it, and then the

10   external hard drive with the documents from the government.

11             THE COURT:  And there won't be anything on

12   there, no WordPerfect or any --

13             MS. CHARTIER:  Nothing.  They have to hand write

14   their notes even now, to us.

15             THE COURT:  Any problem with that?

16             MR. HINOJOSA:  No, Your Honor.

17             THE COURT:  That's fine.

18             MS. CHARTIER:  Thank you.

19             THE COURT:  I suspect that we're going to have

20   pretty much the same thing for Dr. Nagarwala, wherever she's

21   being housed, so that she can review it for you, also.

22             MS. SMITH:  Yeah, and the complication, and the

23   reason it's so difficult is because in my office I have to

24   use three different laptops to access the types of files

25   they have.  I have three different laptops, but it's not

Conference Re: Discovery
July 19, 2017

1    just as simple as, here's a laptop, go ahead and go through

2    it.  I literally have a stack of laptops we use to go

3    through the materials in this case.  I can't drop off a

4    stack of laptops to the jail.  So I need some direction from

5    the Court on what I can do, but that's -- I need her help, I

6    need her to be able to do that.

7              THE COURT:  I understand.  I don't know exactly.

8    I mean, if you can do it to one -- I just don't know.  Why

9    don't you talk to the government, talk to -- apparently, you

10   can put it all on one.

11             MS. CHARTIER:  Well, I say that, but I'm not the

12   tech person in our office.  So I know that everything is on

13   an external hard drive, and I'm going to ask the tech

14   person.  If there's a problem, I'm sure I'd be contacting --

15             THE COURT:  Yeah, or just do it piecemeal.  Take

16   one computer, download on an external hard drive, everything

17   else is wiped out, and when she's through doing that, you'll

18   bring her another one. Same thing here.

19             MS. CHARTIER:  I don't know if it's the same --

20             THE COURT:  I'm not a computer person, I have no

21   idea.  I know it can be worked out, so --

22             MS. CHARTIER:  The access is something that I

23   don't know if you would know that, but, for example, when

24   Dr. Attar was in Milan, we had made those arrangements

25   initially, and then when I went to Milan, they said

Conference Re: Discovery
July 19, 2017

1   absolutely not.

2           THE COURT:  I know.  I think when Jamie from the

3   Marshal's service was here, every jail is different.  So

4   we'll have to cross those bridges when we get to them, and

5   go from there.

6           MS. SMITH:  Thank you.

7           THE COURT:  Okay.  Anything else?  Okay.  Thank

8   you.  We stand in recess.

9           (Proceedings concluded at 11:46 a.m.)

10                      -   -   -

11

12            **C E R T I F I C A T I O N**

13

14  I, Suzanne Jacques, Official Court Reporter for the United

15  States District Court, Eastern District of Michigan, Southern

16  Division, hereby certify that the foregoing is a correct

17  transcript of the proceedings in the above-entitled cause on the

18  date set forth.

19

20

21  s/ Suzanne Jacques__                    August 6, 2017
    Suzanne Jacques, RPR, RMR, CRR, FCRR       Date
22  Official Court Reporter
    Eastern District of Michigan
23

24                      -   -   -

25

                    Case No. 17-CR-20274-01