UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,  No. 17-20274

      Plaintiff,  Hon. Bernard A. Friedman

v.

D-1 JUMANA NAGARWALA,

      Defendant.
_____/

**GOVERNMENT'S RESPONSE TO
DEFENDANTS' MOTION TO DISMISS COUNT SEVEN (R. 373)**

For the reasons stated in the government's brief, this Court should deny Jumana Nagarwala's motion to dismiss Count Seven of the Third Superseding Indictment.

      MATTHEW J. SCHNEIDER
      United States Attorney

      /s/ Amy Markopoulos
      AMY MARKOPOULOS
      Counsel
      U.S. Department of Justice

      /s/ Malisa Dubal
      MALISA DUBAL
      Assistant Chief
      U.S. Department of Justice

                                        s/ John Neal
                                        JOHN NEAL

                                        s/ Sara D. Woodward
                                        SARA D. WOODWARD
                                        Assistant United States Attorney
                                        211 W. Fort Street, Suite 2001
                                        Detroit, MI 48226
                                        Phone: (313) 226-9180
                                        sara.woodward@usdoj.gov

Dated: January 31, 2020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,         No. 17-20274

    Plaintiff,                      Hon. Bernard A. Friedman

v.

D-1 JUMANA NAGARWALA,

    Defendant.
    _____/

## BRIEF IN SUPPORT OF GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS COUNT SEVEN

Defendant Jumana Nagarwala coordinated the interstate travel of the mothers of two seven year-old victims. At Nagarwala's direction, these mothers traveled from Minnesota to Michigan for the purpose of having Nagarwala perform female genital mutilation on their daughters.

Count Seven of the Third Superseding Indictment charges Nagarwala with conspiring with the Minnesota mothers for them to travel to Michigan for the purpose of engaging in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b), (e). Defendant Nagarwala now moves to dismiss this count, asking the Court to find, as a matter of law, that in order to violate the statute, the traveling person (here, the Minnesota

3

mothers) must intend to personally perform illicit sexual conduct on the victims. Defendants interpretation of 18 U.S.C. §§ 2423(b), (e) is far too narrow, and the Court should look to the plain meaning of the word "engage." While the Minnesota mothers did not personally perform FGM on their daughters, they actively participated by coordinating the procedures, traveling to Michigan, and ultimately handing their daughters directly to Nagarwala. The mothers waited in the lobby of the clinic for their daughters, no more than 20 feet away while Nagarwala performed FGM. As a result, they were involved; they participated; they took part. The motivating purpose of their trip to Michigan was to engage in FGM on their daughters.

Defendant's motion should be denied.

## I. STATEMENT OF FACTS

On February 3, 2017, co-defendants Haseena Halfal and Zainab Hariyanawala brought their seven-year-old daughters (MV-1 and MV-2) from Minnesota to Michigan for Nagarwala to perform FGM on their genitals. Through text messages and telephone conversations, Nagarwala directed Halfal and Hariyanawala to Attar's medical facility, and told them to enter the clinic separately. When they arrived, the clinic

was closed for the evening, and most of the lights were off. Separately each mother and child entered the clinic, where they remained for approximately 20 minutes. The mothers stayed in the waiting room while Nagarwala took each girl into an examination room.

In the exam room, Nagarwala removed each girl's pants and performed a procedure on her genitals. After cutting the girls, Nagarwala placed absorbent pads in their underwear, and provided their mothers with perineal irrigation bottles[1] to ease any pain during urination.

A child abuse pediatrician performed a complete medical examination on MV-1 and MV-2. The doctor concluded that both examinations were consistent with the girls having been subjected to genital mutilation. The doctor also found evidence of removed tissue, lacerations, and scar tissue. Specifically for MV-1, the doctor found that the child's labia minora had been altered or removed, and that her clitoral hood was abnormal in appearance.

## II. INDICTMENT

---

[1] Hospitals commonly provide perineal irrigation bottles to new mothers after childbirth to ease the pain of vaginal tearing.

This Court has previously granted two motions to dismiss counts in the indictment. (R. 268, 373.) As a result, the only charges that remain pending in the Third Superseding Indictment are as follows:

- Count Seven, which charges Nagarwala with a conspiracy to violate 18 U.S.C. § 2423(b), (e);
- Count Eight, which charges Nagarwala, Fakhruddin Attar, Farida Attar, and Fatema Dahodwala with conspiracy to obstruct an official proceeding, in violation of 18 U.S.C. § 1512(k).

### III. ARGUMENT

Motions to dismiss an indictment in a criminal action are governed by Rule 12 of the Federal Rules of Criminal Procedure. Rule 12 provides that a defendant may bring a motion challenging "a defect in the indictment or information," including "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B). In evaluating a motion to dismiss, courts assume the allegations in the indictment are true and view them in the light most favorable to the government. *United States v. Scott*, No. 10-20235, 2014 WL 7272755, at 2 (E.D. Mich. Dec. 18, 2014); *see also United States v. Landham*, 251 F.3d 1072, 1080 (6th Cir. 2001) ("[C]ourts evaluating

motions to dismiss do not evaluate the evidence upon which the indictment is based."). "Generally, the strength or weakness of the government's case, or the sufficiency of the government's evidence to support a charge, may not be challenged by a pretrial motion." *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994).

### A. Elements of § 2423(b), (e)

Count Seven of the Third Superseding Indictment charges Nagarwala under 18 U.S.C. §§ 2423(b) and (e). Subsection (b) makes it a crime to travel in interstate commerce with "a motivating purpose of engaging in any illicit sexual conduct with another person," while Subsection (e) prohibits any attempt or conspiracy to commit the same. To convict a defendant under § 2423(b), the government must show (1) that a person traveled in interstate commerce; and (2) that the person did so with intent to engage in illicit sexual conduct. Sixth Circuit Pattern Jury Instructions, 16.11.

Section 2423(e) specifically criminalizes conspiracies to violate 18 U.S.C. § 2423(b). The elements of conspiracy to violate 2423(b) are not described within the statute itself, but the Sixth Circuit Pattern Instructions suggest that "an instruction may be compiled using the

7

instructions in Chapter 3, Conspiracy, with one caveat. Conspiracies under 2423(e) do not require an overt act." Sixth Circuit Pattern Jury Instructions, 16.11, Committee Commentary. And the general elements of criminal conspiracy in the Sixth Circuit require: (1) an object to be accomplished; (2) a plan or scheme embodying the means to accomplish that object; and (3) an agreement or understanding among co-conspirators to cooperate for accomplishment of the object. *United States v. Gibbs*, 182 F.3d 408, 420 (6th Cir. 1999). The agreement need not be express or sophisticated, and may be formed tacitly between co-conspirators. *Id.*

18 U.S.C. § 2423(f) defines "illicit sexual conduct" as including the definition of "sexual act" found in 18 U.S.C. § 2246. And a "sexual act" under 18 U.S.C. § 2246 includes the penetration or intentional touching of the genitals of a minor with the intent to abuse, humiliate, harass, or degrade. 18 U.S.C. § 2246(2)(C), (D). In her motion, Defendant does not argue that FGM is not "illicit sexual conduct."

### B. The Minnesota mothers engaged in FGM

The government alleges that Nagarwala conspired with Halfal and Hariyanawala for the mothers to travel in interstate commerce with their

children, and the purpose of their travel was to have Nagarwala perform FGM on their daughters. Defendant's motion raises a single, simple issue: whether the traveling party must *intend to personally* commit a sex crime. Defendant argues that because her co-conspirators, Hariyanawala and Halfal, did not travel to Michigan with the intent to *personally* perform FGM on their daughters, that Nagarwala cannot be guilty of conspiring with them to violate Section 2423(b).

Defendant's argument fails, because it rests on an unduly narrow reading of Section 2423(b) that is inconsistent with its plain terms. The dispute between the parties concerns the appropriate construction of the word "engaging." The statute prohibits interstate travel "with a motivating purpose of *engaging* in any illicit sexual conduct." 18 U.S.C. § 2423(b), emphasis added.

"In determining the meaning of a statutory provision, we look first to its language, giving the words used their ordinary meaning." *Artis v. District of Columbia*, 138 S.Ct. 594, 603 (2018). And here, the "ordinary meaning" of the § 2423(b) is dependent upon the verb "engaging." The most pertinent definition of the verb "engaging" found in the American Heritage Dictionary is: "[t]o involve oneself or become occupied;

9

participate." American Heritage Dictionary, 3rd Ed., p. 610 (1992). The Merriam-Webster dictionary likewise defines the verb as "to do or take part in something." See Miriam-Webster Dictionary Online, found at https://www.merriam-webster.com/dictionary/engage (2019).

Both of these sources suggest that "engaging" has a broader definition than personally committing a specific act. In the instant case, both of the Minnesota mothers were plainly "involved in" and "took part in" the FGM performed their daughters. The mothers coordinated their interstate travel with Nagarwala via text message and phone calls. They discussed exactly where to go and when. On the chosen date, the mothers and their daughters left Minnesota and drove straight to Fakhruddin Attar's clinic, where they met Nagarwala. The mothers then handed their daughters over to Nagarwala, who led them to an examination room. Each mother waited in the lobby for approximately 20 minutes before being reunited with her child. After the procedure, Nagarwala gave the women after-care instructions on how to care for their daughter's wounds. Although the women did not *personally perform* FGM on their daughters, they were involved, they participated, and they took part. They were active participants in every step of the process. As a result,

10

the motivating purpose of their trip to Michigan was to *engage* in FGM on their daughters.

The mothers intended that FGM occur; they facilitated it, and they were instrumental to their daughters being subjected to it. Their travel across state lines was for the specific purpose of having Nagarwala perform this procedure on their daughters. The plain terms of the verb "engaging" implicate them in this conduct—the mothers were substantially "involved in" and "participated in" the illicit sexual conduct. For the court to hold that in order to "engage in" in illicit sexual conduct, the mothers must personally touch their daughter's genitals would be a construction of the statute at odds with its plain meaning.

### C. Count Seven properly alleges a conspiracy

Count Seven of the Third Superseding Indictment should not be dismissed because it properly states every element of the offenses charged. The defendant does not even question the existence of these elements in her motion to dismiss, nor could she. The Third Superseding Indictment lays out each requisite element in turn, stating that the defendant knowingly and willfully conspired for persons to travel in interstate commerce for purposes of engaging in illicit sexual conduct as

11

defined in the statute. Third Superseding Indictment, ¶ 55 (Sept. 12, 2018) (R. 334.) The Indictment also contains the following details, demonstrating each element further:

1. Defendant and others agreed to bring two minor children under 16 years of age across state lines at an appointed day and time determined in advance, for purposes of FGM (Id. ¶¶ 45-50);

2. FGM involves an intentional touching of the victims' genitalia for purposes of abusing, humiliating, harassing, or degrading those victims by excising and infibulating the whole or part of the labia majora, labia minora, and clitoris, and therefore constitutes "illicit sexual conduct" as defined in Section 2423. (Id. ¶ 22);

3. Members of the conspiracy then in fact traveled from Minnesota to Michigan with the intended victims (Id. ¶ 46);

4. The intended purpose and actual result of that interstate travel was that members of the conspiracy inflicted FGM on the victims (Id. ¶¶ 45, 47-50, 10-11);

Defendant does not deny that the Government has properly alleged interstate travel, or the illicit sexual conduct that was the objective of that travel; nor does she argue that the Government has failed to

12

properly allege an agreement between the defendant and others to bring about each of these events. Her sole argument is that no underlying offense (and by extension no conspiracy to commit the underlying offense) can exist because no one person in the conspiracy committed all statutory elements of the offense. Yet, in urging this Court to bifurcate the actions of the defendant from those of her co-conspirators, the defendant overlooks one of the bedrock principles of conspiracy law: "that a conspiracy is a single, unified offense." *United States v. Pruitt*, 156 F.3d 638, 644 (6th Cir. 1998) (*citing Braverman v. United States*, 317 U.S. 49, 52-53 (1942)).

Individual defendants need not have individually committed the full underlying offense in order to be party to a conspiracy to commit that offense—rather, "so long as the partnership in crime continues, the partners act for each other in carrying it forward." *Pinkerton v. United States*, 328 U.S. 640, 646 (1946). Indeed, the Federal Rules of Criminal Procedure expressly recognize that a "series of acts or transactions" committed by two or more defendants may yet constitute a single chargeable offense. Fed. R. Crim. P. 8(b). This is precisely the situation here, where Defendant and her co-conspirators acted in series and in

13

agreement, first to travel across state lines, and then to engage in illicit sexual conduct with the victims, thus satisfying every element of 18 U.S.C. §§ 2423(b) and (e).

The defendant cites to no case law in support of the astonishing proposition that a crime committed in parts by co-conspirators is no crime at all. The defendant's citation on *Ocasio v. United States* relies on a reading that is too narrow to bear the weight assigned. Def.'s Mot. to Dismiss at 7 (quoting *Ocasio v. United States*, 136 S. Ct. 1423, 1429 (2016)). Read properly, that case stands for the proposition advanced by the Government here, namely that the basic principles of conspiracy law permit the offense to be committed in parts by members of the conspiracy. *Ocasio*, 136 S. Ct. at 1432 ("[E]ach conspirator must have specifically intended that *some conspirator* commit each element of the substantive offense." (emphasis in original)). The conspiracy need only accomplish all elements of the underlying substantive criminal offense as an aggregate endeavor. *Id.* at 1429 ("[T]he fundamental characteristic of a conspiracy is a joint commitment to an 'endeavor which, if completed, would satisfy all of the elements of [the underlying substantive] criminal offense.'" (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997))). Put simply, it

14

is "unnecessary for each member of a conspiracy to agree to commit each element of the substantive offense," or even to have been capable of doing so, for a conspiracy charge nevertheless to be proper. *Id.* at 1430.

If the law were to be construed in the manner urged by Defendant, such construction would produce absurd results where co-conspirators could escape criminal liability merely by divvying up the elements of any given crime amongst each other. Such a tactic was met with skepticism in *United States v. Newman*, a case in which a defendant was convicted of being a felon in possession of a shotgun where in fact his co-conspirator alone had physical possession of the firearm. 755 F.3d 543 (7th Cir. 2014). The Seventh Circuit cited to Supreme Court precedent on aiding and abetting convictions, noting that such convictions "are proper even though each participant commits a subset of the crime's elements . . . . It is hard to see why conspirators' liability should be treated differently." *Id.* at 547; see also *Rosemond v. United States*, 572 U.S. 65, 74 (2014) ("The division of labor between two (or more) confederates thus has no significance: A strategy of 'you take that element, I'll take this one' would free neither party from liability.").

The Seventh Circuit's commentary is consistent with the result intended by Congress in enacting conspiracy statutes. *Pinkerton*, 328 U.S. at 647 ("[T]he law of conspiracy [recognizes the principle that] the overt act of one partner in crime is attributable to all."). In the same vein, the acts of the defendant's co-conspirators may be attributable to her for purposes of holding her responsible for the substantive offense itself. *Id.* Accordingly, the actions of Nagarwala's co-conspirators who crossed state lines to bring the victims to her should be evaluated as if they were committed by Defendant; their travel, combined with the overt illicit sexual conduct committed Defendant in performing FGM, brings Nagarwala squarely within the four corners of Count Seven.[2]

Defendant cites to *United States v. Kelly* for the proposition that "the offender's mental state whilst traveling" is determinative of criminal culpability—thus, since the "travelers" (here the victims' mothers) did not intend to perform FGM themselves and thus lacked the requisite

---

[2] The Defendant does not, and cannot, contest that the Government would have adequately alleged a conspiracy to violate 2423 if the mothers and Nagarwala agreed that Nagarwala would travel from Michigan to Minnesota to perform the procedure in the mothers' kitchens. It would be absurd for the law to outlaw that conduct but permit the exact same conduct because it was the mothers traveling.

16

mental state, no violation has occurred. Def.'s Mot. to Dismiss at 6 (Nov. 29, 2018) (R. 373] (*citing United States v. Kelley*, 510 F.3d 433 (4th Cir. 2007)). This selective quotation from *Kelly* is inapposite to the facts here. The defendant in *Kelly* was not indicted under the conspiracy prong of Section 2423, but rather only for the substantive offense of traveling with intent to engage in illicit sexual conduct. *Kelly*, 510 F.3d at 436. Given that the *Kelly* defendant was indicted for the substantive offense but not for conspiracy, it stands to reason therefore that both the travel and the intent to perform illicit sexual conduct must have existed within the same "offender." That is not the situation here, where the travel and the illicit sexual conduct were undertaken in concert by co-conspirators, as properly charged in Count Seven. The Government has properly alleged in the indictment that the mothers intended for illicit sexual conduct to occur once they crossed state lines; the fact that the illicit sexual conduct was undertaken by a non-traveling co-conspirator (the defendant) does not negate the fact that each element of the offense was nevertheless satisfied by the conspiracy as a whole.

For the foregoing reasons, this Court should deny Nagarwala's motion to dismiss Count Seven of the Third Superseding Indictment.

## IV. CONCLUSION

Defendants' motion to dismiss Count Seven should be denied.

>Respectfully submitted,
>
>MATTHEW SCHNEIDER
>Acting U.S. Attorney
>
>*s/Amy Markopoulos*
>AMY MARKOPOULOS
>MALISA DUBAL
>Department of Justice, Fraud Section
>1400 New York Avenue, NW
>Washington, DC 20005
>
>*s/Sara D. Woodward*
>SARA D. WOODWARD
>JOHN NEAL
>Assistant United States Attorneys
>211 West Fort Street, Ste. 2001
>Detroit, MI 48226-3220

Dated: January 31, 2020

## **CERTIFICATE OF SERVICE**

I certify that on January 31, 2020, I electronically filed this motion response for the United States with the Clerk of the United States District Court for the Eastern District of Michigan using the ECF system, which will send notification of such filing to counsel of record.

/s/ Amy Markopoulos
Department of Justice, Criminal
Division
