UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,   No. 17-20274

    Plaintiff,   Hon. Bernard A. Friedman

v.

D-1 JUMANA NAGARWALA,
D-2 FAKHRUDDIN ATTAR,
D-3 FARIDA ATTAR, and
D-6 FATEMA DAHODWALA,

    Defendants.
_____/

**GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION TO AMEND PROTECTIVE ORDER (ECF No. 447)**

Defendants filed a motion requesting that the Court amend the 2017 protective order to (1) permit defendants to review discovery outside of their counsels' presence, and (2) allow defense counsel to provide recordings of minor children's anogenital examinations to prospective expert witnesses. (ECF No. 447.)

But before the motion was filed, the government had already agreed that the Covid-19 pandemic required modification of the protective order to permit Defendants to review most of the discovery materials without

1

their attorneys. The only items that government requested that Defendants review with their attorneys were: (1) confidential informant reports and recordings; (2) colposcope evidence; and (3) child forensic interviews. Only the first category is at issue here; Defendants are not requesting permission to review colposcope evidence and child forensic interviews without counsel present. The government's modification is reasonable and would protect cooperating witnesses from harm and undue influence. Defense counsel rejected this proposal and filed the instant motion instead.

Prior to filing their motion, Defendants did not confer with the government about providing colposcope evidence to potential expert witnesses. Regardless, the government opposes this request for the reasons stated below.

## *Background*

On June 2, 2017, the Court entered a sealed protective order for "discovery and related materials." (ECF No. 48, PageID 420–24.) On September 20, 2017, in response to several motions and oral argument (ECF Nos. 125, 131, 143, 145), the Court entered the current protective

2

order under seal. (ECF No. 169, PageID 1322–34.) This protective order states, in pertinent part, that:

    3.    . . . defense counsel and Defendants are limited from disclosing discovery and related materials . . . under the following conditions:

        b)    Defendants may review such [discovery] materials at any time in the presence of their defense counsel, defense counsel's legal assistants or other employees assisting in defense preparation.

        . . .

    6.    . . . the government will provide Defendants with a copy of video and photographs taken with a colposcope during anogenital examinations of children (hereinafter "Colposcope Evidence") that is in the government's possession. The following conditions apply to the Colposcope Evidence. . .

        c)    . . . the Colposcope Evidence shall at all times remain in the custody and control of counsel for the indicted Defendants. . . .

        d)    The Colposcope Evidence shall not be disseminated, reproduced, or copied. The Colposcope Evidence shall not be uploaded to a network, a server, or other third party sharing or viewing software. . . .

        . . .

        f)    If Counsel for the Indicted Defendants wishes to show the Colposcope Evidence to prospective medical experts, Counsel for the Indicted Defendants must personally bring the Colposcope Evidence to such prospective experts, and may show them the evidence on a computer that belongs to Counsel for the Indicted Defendants. This computer may not be connected to the internet. Counsel for the Indicted Defendants may not leave

> copies of the Colposcope Evidence, in any form, with prospective experts, nor may Counsel for the Indicted Defendants permit such experts to load or view the Colposcope Evidence on their own computers. Counsel for the Indicted Defendants must be physically present while such experts review the evidence.

To date, the government has provided the defense with approximately 25 productions of discovery containing nearly 4,000 pages of documents. The materials produced include search warrant affidavits, T-III documents and recordings, photographs, recorded interviews of defendants and witnesses, phone records, cell phone forensic reports, and pole-camera recordings. The materials also include colposcope evidence and child forensic interviews.

On September 9, 2020, the defense requested that the government produce confidential source reports and recordings described in the T-III affidavit. On November 17, 2020, the government produced eight disks containing sensitive audio and video recordings, as well as reports related to confidential informant interviews.

The very next day, on November 18, 2020, the defense asked the government to amend the protective order to permit Defendants to review all discovery, except for colposcope evidence and child forensic interviews, outside of the presence of counsel. The government agreed to

4

this amendment, with the exception of confidential informant reports and recordings. The defense rejected this proposal, and instead filed the instant motion.

### *Argument*

Rule 16(d)(1) of the Federal Rules of Criminal Procedure provides that "the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). The Supreme Court has sanctioned the use of protective orders, directing that "the trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect." *Alderman v. United States*, 394 U.S. 165 (1969); see also *Bittaker v. Woodford*, 331 F.3d 715, 726 (9th Cir. 2003) ("The power of courts . . . to delimit how parties may use information obtained through the court's power of compulsion is of long standing and well-accepted."). In doing so, the trial court should seek to ensure that disclosure of discovery materials to a defendant "involve[s] a minimum hazard to others." *Alderman*, 394 U.S. at 185 (1969).

Lower courts have echoed this admonition in recognizing a protective order as the necessary way to protect cooperating witnesses from harm and undue influence, maintain the confidentiality and viability of an ongoing criminal investigation and future investigations, and prevent other types of unwarranted disclosures that may harm third parties. See, e.g., *United States v. Mills*, 641 F.2d 785, 790 (9th Cir. 1981) ("The need to protect those who cooperate with the government is especially compelling here where the witnesses . . . live in fear of retaliation for providing evidence. . . [, and] [d]epriving them of that protection also jeopardizes the likelihood of future cooperation. . . ."); *United States v. Roberts*, 793 F.2d 580, 587 (4th Cir. 1986) (protective order limiting disclosure of co-conspirator statements based on concern for security of prospective witnesses and co-conspirators); *United States v. Anderson*, 509 F.2d 724, 730 (9th Cir. 1975) (protective order prohibiting defense counsel from disclosing informant's identity); *United States v. Dellinger*, 472 F.2d 340, 392 (7th Cir. 1972) (protective order against disclosure to others of electronic surveillance logs of defendants' conversations); *United States v. Aiken*, 76 F. Supp. 2d 1339, 1343 (S.D. Fla. 1999) (protective order where defendants or other members of their

6

organization may attempt to make improper attempts to influence a cooperating witness).

### *Defendants' Request to Review Discovery Outside of the Presence of Counsel*

In recognition of the limitations imposed by the coronavirus pandemic, the government is prepared to amend the protective order to allow Defendants to review discovery outside of their counsels' presence with three exceptions: (1) the colposcope evidence; (2) child forensic interviews; and (3) confidential source reports and recordings. The first two categories are not in dispute. But Defendants ask the Court to lift the restriction on the third category—confidential source reports and recordings—without acknowledging that this category of discovery is especially sensitive. The Court must balance the Defendants' rights to discovery with its obligation to protect sources and witnesses from intimidation and retribution. The confidential informants and cooperating witnesses in this case are concerned for their safety. They face tremendous pressure not to cooperate with law enforcement, or to recant their disclosures or prior statements. Requiring Defendants to review this newly-produced material in the presence of counsel will help prevent unwarranted dissemination to other members of the community.

### *Defendants' Request to Provide*
### *Colposcope Evidence to Experts*

Pursuant to the Court's August 30, 2017 order and the September 20, 2017 protective order (ECF No. 169), the government has provided the defense with the colposcope recordings[1] in its possession documenting minor victim anogenital examinations.[2] The protective order prohibits defense counsel from providing copies of the colposcope evidence to anyone, and sets forth strict protocol for how to review the evidence with potential experts. (September 20, 2017 Protective Order, ¶ 6, ECF No. 169, Page ID 1330–33.)

At the time that the Court ordered the government to produce the colposcope evidence to the defense, the defendants were charged with six counts of female genital mutilation in violation of 18 U.S.C. § 116. But the Court dismissed those charges, and the only count remaining is

---

[1] Colposcopy is a medical diagnostic procedure to examine an illuminated, magnified view of the cervix and the tissues of the vagina and vulva. It is done using a colposcope, which provides an enlarged view of the areas, allowing the colposcopist to visually distinguish normal from abnormal appearing tissue. A specialized colposcope equipped with a camera is often used in examining and collecting evidence for victims of rape and sexual assault.

[2] An anogenital examination is an examination of, relating to, or involving the genitals and the anus.

obstruction of justice. It is unclear to what extent, if any, expert testimony will be needed from either side in order for the jury to determine whether the defendants engaged in a conspiracy to obstruct justice.

18 U.S.C. § 3509 sets forth the rights of child victims and witnesses. In addition, all victims are entitled to protection under the Crime Victim's Rights Act (CVRA) 18 U.S.C. § 3771. The CVRA gives victims a right to "be reasonably protected from the accused," and "the right to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. §§ 3771(a)(1), (a)(8). Additionally, the Act directs the government and the Court to "ensure that the crime victim" is afforded these rights. 18 U.S.C. § 3771 (b)(1), (c)(1).

The videos of the minor victims' anogenital examinations are incredibly sensitive in nature. Each video is approximately 4 to 5 minutes long, and depicts the vagina, labia minora, labia majora, clitoris, clitoral hood and anus of each girl. The children's ages range from 7 to 18. The genitals of the children are magnified up to 15 times. In the videos, a doctor palpates the child's genitals and moves tissue and skin surrounding the child's vagina aside. The videos in question were created

9

by doctors performing examinations of children with the consent of their parents, or in the case of Minnesota children, with a state search warrant. When the images and videos were created, the medical doctors did not intend for them to be disseminated in any fashion.

Under the current protective order, defense counsel—all of whom are officers of the Court—are responsible for complying with the restrictions imposed by the protective order. But if the Court permits defense counsel to provide copies of the evidence to potential witnesses, it will be impossible to control further dissemination—even inadvertent—of these sensitive videos. There are four defendants, and each is entitled to seek out a qualified expert. Each defendant might give a copy of the video to several different potential experts, and there would be no way to enforce the protective order or ensure that these videos are not further disseminated. The potential experts might copy the videos to their computers or they might leave CDs laying around the office. Having potential experts review the videos in the presence of defense counsel is the only way to safeguard the videos, prevent dissemination, and treat the minor children with fairness and respect for their dignity and privacy.

## *Conclusion*

Defendants' motion should be denied.

>Respectfully submitted,
>
>MATTHEW SCHNEIDER
>U.S. Attorney
>
>*s/Sara D. Woodward*
>SARA D. WOODWARD
>Assistant United States Attorney
>211 West Fort Street, Ste. 2001
>Detroit, MI 48226-3220
>(313) 226-9180
>sara.woodward@usdoj.gov

Dated: December 14, 2020

## **CERTIFICATE OF SERVICE**

I certify that on December 14, 2020, I electronically filed this motion response for the United States with the Clerk of the United States District Court for the Eastern District of Michigan using the ECF system, which will send notification of such filing to counsel of record.

                                          */s Sara D. Woodward*
                                          SARA D. WOODWARD
                                          Assistant United States Attorney
                                          211 West Fort Street, Suite 2001
                                          Detroit, Michigan 48226-3211
                                          (313) 226-9180

December 14, 2020