UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                               Criminal No. 17-CR-20274

vs.                                       HON. BERNARD A. FRIEDMAN

JUMANA NAGARWALA,
FAKHRUDDIN ATTAR,
FARIDA ATTAR, and
FATEMA DAHODWALA,

        Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS THE FOURTH SUPERSEDING INDICTMENT**

        This matter is presently before the Court on defendants' motion to dismiss the fourth superseding indictment (ECF No. 487). The government has responded and defendants have replied. On September 15, 2021, the Court heard oral argument. For the reasons stated below, the Court shall grant the motion.

***Facts***

        The relevant procedural history of this case, which is now four and one-half years old, can be summarized as follows. The original indictment (ECF No. 16), filed in April 2017, alleged that three defendants (Jumana Nagarwala, Fakhruddin Attar, and Farida Attar) committed and conspired to commit female genital mutilation ("FGM") and that they conspired to make false statements to law enforcement officers regarding their FGM-related activities. The indictment also charged defendants Nagarwala and Fakhruddin Attar with conspiring to transport a minor with intent that she engage in criminal sexual activity. The indictment was presented in seven counts:

| Count | Charge |
|---|---|
| One | 18 U.S.C. § 371 ("Conspiracy to Commit Female Genital Mutilation") |
| Two and Three | 18 U.S.C. §§ 116 and 2 ("Female Genital Mutilation") |
| Four | 18 U.S.C. § 2423(a), (e) ("Conspiracy to Transport Minor with Intent to Engage in Criminal Sexual Activity") |
| Five | 18 U.S.C. § 1512(c)(2), (k) ("Conspiracy to Obstruct an Official Proceeding") |
| Six | 18 U.S.C. § 1001 ("False Statement to Federal Officer") |
| Seven | 18 U.S.C. § 1001 ("False Statement to Federal Officer") |

In June 2017, the government obtained a first superseding indictment (ECF No. 58) that asserted the same charges as the original indictment against the original three defendants and three additional defendants (Tahera Shafiq, Farida Arif, and Fatema Dahodwala):

| Count | Charge |
|---|---|
| One | 18 U.S.C. § 371 ("Conspiracy to Commit Female Genital Mutilation") |
| Two - Five | 18 U.S.C. §§ 116 and 2 ("Female Genital Mutilation") |
| Six | 18 U.S.C. § 2423(a), (e) ("Conspiracy to Transport Minor with Intent to Engage in Criminal Sexual Activity") |
| Seven | 18 U.S.C. § 1512(c)(2), (k) ("Conspiracy to Obstruct an Official Proceeding") |
| Eight | 18 U.S.C. § 1001 ("False Statement to Federal Officer") |
| Nine | 18 U.S.C. § 1001 ("False Statement to Federal Officer") |

In September 2017, the government obtained a second superseding indictment (ECF No. 153) that asserted essentially the same charges as the first superseding indictment (minus the § 1001 "false statement to federal officer" charges) against the six defendants previously named and two additional defendants (Haseena Halfal and Zainab Hariyanawala):

| Count | Charge |
|---|---|
| One | 18 U.S.C. § 371 ("Conspiracy to Commit Female Genital Mutilation") |
| Two - Five | 18 U.S.C. §§ 116 and 2 ("Female Genital Mutilation") |
| Six | 18 U.S.C. § 2423(a), (e) ("Conspiracy to Transport Minor with Intent to Engage in Criminal Sexual Activity") |
| Seven | 18 U.S.C. § 1512(k) ("Conspiracy to Obstruct an Official Proceeding") |

Count Six charged defendants Nagarwala and Fakhruddin Attar with conspiring "together and with other persons both known and unknown to the Grand Jury, to knowingly transport an individual who

2

had not attained the age of 18 years, in interstate and foreign commerce, with the intent that the individual engage in any sexual activity for which any person can be charged with a criminal offense, in violation of Title 18 U.S.C. § 2423(a), (e)."[1]  Second Superseding Indictment ¶ 43.  In January 2018, the Court granted the motion of these defendants to dismiss this count for the following reasons:

> Count Six must be dismissed because . . . the indictment in this case alleges no facts which, if proven, would establish that Dr. Nagarwala or Dr. Attar violated 18 U.S.C. § 2423(a) or (e). To prove their guilt on this charge, the government must show that defendants transported a minor "with intent that [the minor] engage in . . . any sexual activity for which any person can be charged with a criminal offense."

---

[1]Section 2423 states:

> **(a) Transportation With Intent To Engage in Criminal Sexual Activity.—**
> A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned not less than 10 years or for life.
>
> **(b) Travel With Intent To Engage in Illicit Sexual Conduct.—**
> A person who travels in interstate commerce or travels into the United States, or a United States citizen or an alien admitted for permanent residence in the United States who travels in foreign commerce, with a motivating purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.
>
> \*   \*   \*
>
> **(e) Attempt and Conspiracy.—**
> Whoever attempts or conspires to violate subsection (a), (b), ©, or (d) shall be punishable in the same manner as a completed violation of that subsection.

3

Section 2423(a). The facts alleged in the indictment do not support this charge because, as a matter of law, FGM, while a prohibited criminal act, is not "criminal sexual activity."

\* \* \*

Plainly, the government alleges that defendants seriously harmed the victims by touching, penetrating, and cutting their genitalia. However, while such touching, penetration, and cutting may be "criminal sexual conduct" under Michigan law or "sexual acts" under § 2246, they cannot fairly be characterized as "sexual activity" under § 2423(a).

In short, while the indictment may sufficiently allege a violation of the FGM statute—the statute adopted by Congress to address precisely such genital cutting—it does not allege that defendants transported minors intending that they engage in "sexual activity."

*United States v. Nagarwala*, No. 17-CR-20274, 2018 WL 405122, at \*3, 6 (E.D. Mich. Jan. 14, 2018).

In February 2018, the government appealed this order (ECF No. 280). The following month, however, the government moved to voluntarily dismiss its appeal. The Sixth Circuit granted this motion the same day (ECF No. 288).

Six months later, in September 2018, the government obtained a third superseding indictment (ECF No. 334) that differed substantively from the second superseding indictment only in that it omitted the § 2423(a), (e) charge and inserted in its place a new charge that defendant Nagarwala violated § 2423(b), (e) by conspiring "with other persons both known and unknown to the Grand Jury, for persons to travel in interstate commerce, that is, from the State of Minnesota to the State of Michigan, for the purpose of engaging in illicit sexual conduct, as defined in 18 U.S.C. § 2423(f)(1)." Third Superseding Indictment ¶ 55. This superseding indictment was presented in eight counts:

| Count | Charge |
|-------|--------|
| One | 18 U.S.C. § 371 ("Conspiracy to Commit Female Genital Mutilation") |
| Two - Six | 18 U.S.C. §§ 116 and 2 ("Female Genital Mutilation") |
| Seven | 18 U.S.C. § 2423(b), (e) ("Conspiracy to Travel with Intent to Engage in Illicit Sexual Conduct") |
| Eight | 18 U.S.C. § 1512(k) ("Conspiracy to Obstruct an Official Proceeding") |

In November 2018, the Court granted defendants' motion to dismiss Counts One through Six (the FGM charges) of the third superseding indictment. *See United States v. Nagarwala*, 350 F. Supp. 3d 613 (E.D. Mich. 2018). The Court concluded that the statute proscribing FGM, 18 U.S.C. § 116(a), is unconstitutional because Congress lacked authority to enact it under either the Necessary and Proper Clause or the Commerce Clause. *See id.* at 630-31. In December 2018, the government appealed this order (ECF No. 378). In May 2019, however, the government moved to voluntarily dismiss the appeal. The Sixth Circuit granted this motion in September 2019. *See United States v. Nagarwala*, No. 19-1015 (6th Cir. Sept. 13, 2019).

In March 2020, the Court granted defendant Nagarwala's motion to dismiss Count Seven of the third superseding indictment, the § 2423(b) charge that replaced the previously dismissed § 2423(a) charge, for the following reasons:

> Having determined that, on the facts as presented by the government, no violation of § 2423(b) is alleged to have occurred in this case, the Court must dispose of count seven, which charges Nagarwala with conspiring to violate § 2423(b). The [victims'] mothers did not violate § 2423(b) because they did not travel with intent to personally engage in FGM; and Nagarwala did not violate § 2423(b) because she did not travel. Unable to charge either the mothers or Nagarwala under § 2423(b), the government has elected to charge Nagarwala (but not the mothers) with conspiring to violate § 2423(b) on the theory that the three agreed that the mothers would travel and that Nagarwala would perform FGM, and therefore "each element of the offense was . . . satisfied by the conspiracy as a whole." 8 Pl.'s Resp. Br. at 17.

> This argument is unavailing. Section 2423(b) proscribes traveling

with a certain unlawful intent, namely, "with a motivating purpose of engaging in any illicit sexual conduct with another person." A conspiracy under § 2423(e), which is a "conspir[acy] to violate subsection (a), (b), (c), or (d)," would necessarily be an agreement among two or more conspirators for someone – "[a] person," in the words of § 2423(b) – to travel with such intent. But under the facts as alleged by the government in this case, Nagarwala did not enter into such an agreement. That is, the government has alleged no facts from which a jury could find that she agreed with the mothers that they or anyone else would travel with the requisite intent. Instead, the government alleges that Nagarwala and the mothers reached a different agreement – namely, that the mothers would travel with the intent of allowing Nagarwala to engage in illicit sexual conduct (i.e., FGM) with their minor daughters. As deplorable as this agreement may be, it is not an agreement to violate § 2423(b), and therefore it is not a conspiracy covered by § 2423(e).

*United States v. Nagarwala*, 438 F. Supp. 3d 821, 827-28 (E.D. Mich. 2020).

In April 2020, the government appealed this order (ECF No. 429). In June 2020, however, the government moved to voluntarily dismiss the appeal. The Sixth Circuit granted this motion the same day (ECF No. 431).

At this point in the case, all that remained of the third superseding indictment was Count Eight, which made a single charge against defendants Nagarwala, Fakhruddin Attar, Farida Attar, and Dahodwala for violating 18 U.S.C. § 1512(k).[2] The relevant paragraph of the third

---

[2] Section 1512 prohibits tampering with witnesses, victims, and informants. Subsection (k) states: "Whoever conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy." The substantive subsections which potentially apply in this case are § 1512(b) and (c), which state:

> (b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—
>
> (1) influence, delay, or prevent the testimony of any person in an official proceeding;

superseding indictment alleged:

> 57. From on or about April 10, 2017 and continuing through the date of this indictment, in the Eastern District of Michigan and elsewhere, the defendants . . . did knowingly and willfully conspire and agree together and with other persons both known and unknown to the Grand Jury to corruptly persuade each other and other members of

---

(2) cause or induce any person to—

(A) withhold testimony, or withhold a record, document, or other object, from an official proceeding;

(B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;

(C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

(D) be absent from an official proceeding to which such person has been summoned by legal process; or

(3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation[,] supervised release,[] parole, or release pending judicial proceedings;

shall be fined under this title or imprisoned not more than 20 years, or both.

(c) Whoever corruptly—

*   *   *

(2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,

shall be fined under this title or imprisoned not more than 20 years, or both.

7

the Community,[3] and did attempt to do so, and engage in misleading conduct toward each other and other members of the Community, with the intent to hinder, delay and prevent the communication to law enforcement officers and a judge of the United States of information relating to the commission or possible commission of a federal offense, and did also conspire and agree with each other and other persons known and unknown to the grand jury to corruptly obstruct, influence and impede an official proceeding, all in violation of 18 U.S.C. § 1512(k).

In January 2021, defendants filed three motions to dismiss this count on the grounds that (1) the charge was duplicitous in that it alleged violations of both § 1512(b)(3) and § 1512(c)(2), *see* ECF Nos. 453, 457; (2) the charge was insufficiently pled and failed to state a claim, *see* ECF Nos. 454, 458; and (3) the government could not prove that defendants intended to obstruct a judicial or other official proceeding because there was no federal offense and no official proceeding, *see* ECF No. 455.

On February 8, 2021, the parties stipulated to extend the response deadline for these motions until March 15, 2021. *See* ECF No. 460. But instead of responding to defendants' motions to dismiss, the government obtained a fourth superseding indictment (ECF No. 470) charging four of the defendants (Jumana Nagarwala, Fakhruddin Attar, Farida Attar, and Fatema Dahodwala) with the following offenses:

| Count | Charge |
|-------|--------|
| One | 18 U.S.C. § 371 ("Conspiracy to Make False Statements") |
| Two | 18 U.S.C. § 1001 ("False Statements") |
| Three | 18 U.S.C. § 1512(k) (Conspiracy to Tamper with a Witness) |
| Four | 18 U.S.C. § 1512(b)(3) ("Tampering with a Witness") |

---

[3] The third superseding indictment alleged in ¶¶ 1 and 19 that "[s]ome members of a particular community (the Community) are known to practice female genital mutilation (FGM) on young girls within the Community" and that defendants "are members of the Community." At defendant Nagarwala's detention hearing, her attorney identified the community as a Muslim sect called Dawoodi Bohra. *See* ECF No. 10 (PageID.71).

Five                          18 U.S.C. § 1512(b)(3) ("Tampering with a Witness")

The fourth superseding indictment changes the § 371 charge (from "Conspiracy to Commit Female

Genital Mutilation" to "Conspiracy to Make False Statements"); omits the §§ 116 and 2 charges;

omits the § 2423(a), (b), and (e) charges; re-introduces the § 1001 charge (alleged in the original and

first superseding indictments but omitted from the second and third superseding indictments), and

alters and expands on the § 1512 charges, as discussed below.

### The Parties' Arguments

Defendants argue that the fourth superseding indictment should be dismissed because

the government is engaging in vindictive prosecution.  In particular, defendants point to the fact that

the fourth superseding indictment brings new charges (following defendants' three successful

motions to dismiss the FGM and § 2423 charges and the filing of meritorious motions to dismiss the

§ 1512(k) charge) that are based on the same information the government has possessed since the

beginning of the case.  Defendants also point to the fact that all of the charges in the fourth

superseding indictment are premised on FGM being a federal offense, an untenable premise given

the Court's ruling that § 116(a) is unconstitutional.  Defendants suggest that the government "is

punishing [them] for continuously winning motions and getting previous counts dismissed." Defs.'

Reply at 8.

In response, the government argues that it is not prosecuting vindictively.  Rather,

it contends that "the Fourth Superseding Indictment was revised to 'properly allege' the obstruction

and false statement charges, as well as provide additional information about the government's theory

of the case to the defendants, the Court, and ultimately, the jury."  Pl.'s Resp. Br. at 12.  The

government also argues that the FGM statute had not been declared unconstitutional at the time of

defendants' allegedly false statements to law enforcement officers, and therefore defendants may be charged, under § 1001 and § 1512, with making false statements and tampering with witnesses concerning their knowledge of, and involvement in, FGM-related activities. *See id.* at 15-17.

**Law**

   The leading Supreme Court case on prosecutorial vindictiveness is *United States v. Goodwin*, 457 U.S. 368 (1982). In that case, defendant hit a police officer with his car and then sped off, evading arrest. The officer filed a complaint charging defendant with "several misdemeanor and petty offenses." *Id.* at 370. When defendant was arrested three years later, the case was assigned to a Department of Justice attorney "who was detailed temporarily to try petty crime and misdemeanor cases before the Magistrate" and who "did not have authority to try felony cases or to seek indictments from the grand jury." *Id.* at 370-71. When defendant demanded a jury trial, which could not be conducted before the magistrate, the case was transferred to the district court and assigned to an assistant United States attorney ("AUSA"). The AUSA, based on the seriousness of defendant's conduct, defendant's history of violence, defendant's suspected perjury at his preliminary examination, and his failure to appear for trial, obtained an indictment charging defendant with one felony and three misdemeanors. When defendant was convicted of the felony and one misdemeanor, he sought to have the verdict set aside for prosecutorial vindictiveness. Defendant argued that the AUSA brought the more serious charges in retaliation for defendant declining to plead guilty before the magistrate and demanding a jury trial.

   The district court denied the motion, but the court of appeals reversed. In reversing the court of appeals' decision, the Supreme Court stated:

> To punish a person because he has done what the law plainly allows
> him to do is a due process violation "of the most basic sort."

10

> *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S. Ct. 663, 668, 54
> L.Ed.2d 604. In a series of cases beginning with *North Carolina v.
> Pearce* and culminating in *Bordenkircher v. Hayes*, the Court has
> recognized this basic–and itself uncontroversial–principle. For while
> an individual certainly may be penalized for violating the law, he just
> as certainly may not be punished for exercising a protected statutory
> or constitutional right.
>
> . . . Motives are complex and difficult to prove. As a result, in certain
> cases in which action detrimental to the defendant has been taken
> after the exercise of a legal right, the Court has found it necessary to
> "presume" an improper vindictive motive. Given the severity of such
> a presumption, however–which may operate in the absence of any
> proof of an improper motive and thus may block a legitimate
> response to criminal conduct–the Court has done so only in cases in
> which a reasonable likelihood of vindictiveness exists.

*Id.* at 372-73 (footnote omitted).  The Court noted that in *Bordenkircher* it found no due process

violation where the prosecutor threatened to, and then did, bring more serious charges when plea

negotiations broke down because adding or eliminating charges is an accepted aspect of the plea

negotiation process, and therefore "changes in the charging decision that occur in [this] context . .

. are an inaccurate measure of improper prosecutorial 'vindictiveness.'" *Id.* at 379-80.

The Court went on to state that in the absence of evidence of actual vindictiveness,

a due process violation occurs "only if a presumption of vindictiveness–applicable in all cases–is

warranted."  *Id.* at 381.  In concluding that no such presumption arose in that case, the Court stated:

> There is good reason to be cautious before adopting an inflexible
> presumption of prosecutorial vindictiveness in a pretrial setting. In
> the course of preparing a case for trial, the prosecutor may uncover
> additional information that suggests a basis for further prosecution or
> he simply may come to realize that information possessed by the
> State has a broader significance. At this stage of the proceedings, the
> prosecutor's assessment of the proper extent of prosecution may not
> have crystallized. In contrast, once a trial begins—and certainly by
> the time a conviction has been obtained—it is much more likely that
> the State has discovered and assessed all of the information against
> an accused and has made a determination, on the basis of that

11

information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.

In addition, a defendant before trial is expected to invoke procedural rights that inevitably impose some "burden" on the prosecutor. Defense counsel routinely file pretrial motions to suppress evidence; to challenge the sufficiency and form of an indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to government files; to be tried by jury. It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter. The invocation of procedural rights is an integral part of the adversary process in which our criminal justice system operates.

Thus, the timing of the prosecutor's action in this case suggests that a presumption of vindictiveness is not warranted. A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct. As we made clear in *Bordenkircher*, the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution.

*Id.* at 381-82 (footnotes omitted).

While it found no evidence of vindictive prosecution in *Goodwin*, the Supreme Court did not "foreclose the possibility that a defendant in an appropriate case might prove objectively that the prosecutor's charging decision was motivated by a desire to punish him for doing something that the law plainly allowed him to do." *Id.* at 384 (footnote omitted). Such a case presented itself in *United States v. LaDeau*, 734 F.3d 561 (6th Cir. 2013). In *LaDeau*, defendant was charged in a single-count indictment with possessing child pornography, a felony carrying a sentence of zero to ten years. After the court granted defendant's motion to suppress, "thereby eviscerat[ing] the government's possession case," *id.* at 569, the government obtained a single-count superseding indictment that charged defendant with conspiracy to receive child pornography, a more serious

charge carrying a sentence of five to twenty years.  The court granted defendant's motion to dismiss

the superseding indictment for prosecutorial vindictiveness.  In affirming, the Sixth Circuit stated:

> Although a defendant may obtain a dismissal of an indictment on grounds of prosecutorial vindictiveness by showing "actual vindictiveness"—that is, "objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights," *Dupree*, 323 F.3d at 489—an indictment may also be dismissed as vindictive upon a showing that "in the particular factual situation presented, there existed a 'realistic likelihood of vindictiveness' for the prosecutor's action." *Bragan*, 249 F.3d at 481 (quoting *United States v. Andrews*, 633 F.2d 449, 455 (6th Cir.1980) (en banc)). In *Blackledge v. Perry*, 417 U.S. 21, 94 S. Ct. 2098, 40 L.Ed.2d 628 (1974), for example, the Supreme Court held that, where a defendant who had been convicted of a misdemeanor exercised his right to a de novo trial, it was presumptively vindictive for the prosecution to subsequently file a felony charge against him based on the same underlying conduct. *Id*. at 27, 94 S. Ct. 2098. By allowing for a presumption of vindictiveness to be drawn under narrow circumstances, the *Blackledge* rule is a prophylactic one; it safeguards a defendant's due process rights by eliminating apprehension of prosecutorial retaliation where circumstances reasonably indicate retaliation, even if there is no direct evidence that the prosecutor was in fact improperly motivated. *See Goodwin*, 457 U.S. at 373-76, 383, 102 S. Ct. 2485; *United States v. Saltzman*, 537 F.3d 353, 359 (5th Cir. 2008); *Andrews*, 633 F.2d at 455.
>
> If a defendant establishes that "(1) the prosecutor has some stake in deterring the [defendant's] exercise of his rights and (2) the prosecutor's conduct was somehow unreasonable," then the district court may find that there is a "reasonable likelihood of vindictiveness" and may presume an improper vindictive motive. *Bragan*, 249 F.3d at 482 (internal quotation marks omitted); *see United States v. Suarez*, 263 F.3d 468, 479 (6th Cir. 2001). The government bears the burden of rebutting the presumption with "objective, on-the-record explanations" such as "governmental discovery of previously unknown evidence" or "previous legal impossibility." *Bragan*, 249 F.3d at 482 (internal quotation marks omitted); *Andrews*, 633 F.2d at 456.

*Id*. at 566-67.

Regarding the first prong of the analysis, the Sixth Circuit rejected the government's

argument that it had no stake in deterring defendant from exercising his right to seek suppression

of the child pornography he allegedly possessed:

> [N]either of the two rationales undergirding the caution expressed in *Goodwin* against presuming vindictiveness in the pretrial setting applies to the circumstances of this case. First, there is little reason to suspect that the prosecutor's view of LaDeau's case changed significantly between the two indictments, given that the government already possessed all of the relevant evidence that supported the superseding indictment well before procuring the first indictment. *See Goodwin*, 457 U.S. at 381, 102 S. Ct. 2485; *Suarez*, 263 F.3d at 480. "The decision in *Goodwin* stemmed largely from the Supreme Court's understanding of . . . the frequency with which prosecutors must act on (and later compensate for) incomplete information or understanding." *Meyer*, 810 F.2d at 1247. Here, by contrast, the only substantive occurrence between the two indictments was LaDeau's successful suppression motion. The government has never suggested that any other development altered its perception of the case during the thirteen months that it was pending, so there is nothing to indicate that the superseding indictment compensated for unexpected changes or an incomplete initial grasp of the pertinent issues or facts.
>
> Second, the burden that LaDeau's successful suppression motion placed upon the government was significant. *Goodwin* catalogued the type of "routine[ ]" and minimally burdensome filings that it thought unlikely to prompt a vindictive prosecutorial response: "pretrial motions to suppress evidence; to challenge the sufficiency and form of an indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to government files; to be tried by jury." *Goodwin*, 457 U.S. at 381, 102 S. Ct. 2485. As we recognized in *Suarez*, this list is only illustrative of motions that may typically be expected to cause the government very little responsive burden. *Suarez*, 263 F.3d at 479. In *Suarez*, for example, where the defendant had merely indicated that he was planning to file a suppression motion at some point in the future, we rejected the defendant's argument that a presumption of vindictiveness was warranted, given that the only burden that the government faced prior to filing a superseding indictment was the "rather minimal" one of preparing a response to the motion. *Id*. at 480. And in *Moon*, although the government was forced to return twice to the grand jury to obtain new indictments, it was able to resuscitate its prosecution on charges identical to those originally brought in the initial indictment simply by properly alleging an interstate commerce element. *Moon*, 513 F.3d

at 533, 536. . . .

By contrast, LaDeau's motion to suppress was neither routine nor typical: he succeeded in suppressing crucial evidence and thereby eviscerated the government's possession case. As the government concedes, LaDeau's successful motion eliminated its ability to prosecute the charge alleged in the first indictment. Unlike in *Suarez*, the prosecution here was saddled with the prospect of restarting LaDeau's prosecution from scratch, and unlike in *Moon*, the prosecution could not do so simply by making minor adjustments to the language of the indictment and carrying on with the same substantive counts as before. Plainly, LaDeau's exercise of his suppression rights is not fairly comparable to the minimally aggravating pretrial filings contemplated in *Goodwin*. It did not inflict merely "some" incidental burden on the government's ability to prove its case; it inflicted a mortal blow. *Goodwin*, 457 U.S. at 381, 102 S. Ct. 2485. Obtaining LaDeau's conviction on the initial charge of possession of child pornography became not simply more of a chore for the prosecution than it had been before; it became impossible.

\*   \*   \*

*Goodwin* left undisturbed the uncontroversial premise explicated in *Blackledge*: the likelihood that a defendant's exercise of his rights will spur a vindictive prosecutorial response is indexed to the burden that the defendant's conduct has placed on the prosecution. *See Goodwin*, 457 U.S. at 383, 102 S. Ct. 2485; *Blackledge*, 417 U.S. at 27, 94 S. Ct. 2098. When the prosecution "is forced to do over what it thought it had already done correctly," *United States v. Roach*, 502 F.3d 425, 444 (6th Cir. 2007) (internal quotation marks omitted), or where "duplicative expenditures of prosecutorial resources" are required, *Goodwin*, 457 U.S. at 383, 102 S. Ct. 2485, the prosecution's stake in discouraging the defendant's exercise of a right may be "considerable." *Blackledge*, 417 U.S. at 27, 94 S. Ct. 2098.

*Id.* at 568-70.

The Sixth Circuit also agreed with the district court's conclusion that the government

acted unreasonably in bringing more serious charges against defendant after his suppression motion

was granted.  It noted that in general "a superseding indictment is potentially vindictive only if it

15

'add[s] additional charges or substitute[s] more severe charges based on the same conduct charged less heavily in the first indictment.'" *Id.* at 570 (quoting *Suarez*, 263 F.3d at 480).  The court stated that the factors most indicative of unreasonable or vindictive prosecutorial conduct were that

> the charge in the superseding indictment was based on the same conduct underlying the charge in the initial indictment, the prosecution obtained no evidence supporting the superseding indictment that it did not already possess prior to obtaining the initial indictment, and the conspiracy-to-receive count that was charged in the superseding indictment carries longer mandatory minimums and maximums than the possession count that was initially charged.

*Id.* at 570.

Finally, the Sixth Circuit affirmed the district court's rejection of the government's explanations for leveling more serious charges against defendant after his successful motion to suppress.  Here the court emphasized again that

> the evidence relating to the conspiracy remained unchanged over the entire course of the prosecution; there is no new revelation or discovery to support the government's sudden shift to a receipt theory from a possession theory.  At any point in LaDeau's case, the government could have charged him with either receipt or possession of child pornography, *see United States v. Ehle*, 640 F.3d 689, 695 (6th Cir. 2011), yet it chose to pursue the harsher charges only after his successful suppression motion. The government has repeatedly shifted its stance on why its charging decision was reasonable, but it has never persuasively demonstrated that the evidentiary landscape has materially altered, that it was previously impossible to bring a receipt charge, that it "needed time to unravel" complex evidentiary or legal issues, that it was tactically hedging its ability to admit certain key evidence, or the like.  *Suarez*, 263 F.3d at 480-81.  *See also Bragan*, 249 F.3d at 482.

*Id.* at 571 (footnote omitted).

### *Analysis*

Having considered the parties' arguments and the circumstances of this unusual case,

the Court finds that (1) there is a reasonable likelihood of vindictiveness and, therefore, a presumption of improper vindictive motive arises, and (2) the prosecutor has not rebutted this presumption with an objective explanation for obtaining the new and additional charges presented in the fourth superseding indictment.

A presumption of vindictiveness arises in this case because defendants have demonstrated both that the prosecutor has a stake in deterring them from exercising their right to seek dismissal of the various charges and that the prosecutor has acted unreasonably in response to their exercise of this right.  Regarding the prosecutor's stake, the three motions to dismiss which the Court granted in this matter (dismissing, in succession, the § 2423(a), (e), § 116, and § 2423(b), (e) charges), "did not inflict merely 'some' incidental burden on the government's ability to prove its case; it inflicted a mortal blow.  Obtaining [defendants'] conviction on the initial charge[s] . . . became not simply more of a chore for the prosecution than it had been before; it became impossible." *LaDeau*, 734 F.3d at 569 (citation omitted).  These were not run-of-the mill pretrial motions.  Rather, they were motions that put the prosecutor through a great deal of inconvenience and embarrassment.  Collectively, upon being granted, they all but destroyed the government's case. In *LaDeau* the Sixth Circuit recognized that motions which "forced the government to restart its prosecution from square one in order to prevent [defendant] from 'going free'" are the type that "support[] a presumption of prosecutorial vindictiveness." *Id.* at 570.  "When the prosecution is forced to do over what it thought it had already done correctly, or where duplicative expenditures of prosecutorial resources are required, the prosecution's stake in discouraging the defendant's exercise of a right may be considerable." *Id.* at 569-70.  And in the present case defendants forced the government to "do over what it thought it had already done correctly" not just once, but three

times.

In this particular case, the government's stake in deterring the defendants from exercising their rights is heightened because of the extensive publicity this prosecution has received. The Court is aware of three press releases concerning this case issued by the government in April 2017, the month the first three defendants were arrested and the initial indictment was returned.[4] The case also received, and continues to receive, an inordinate level of press attention, in the United States and abroad.[5] This is no ordinary prosecution. It is the first ever in which charges were brought under the FGM statute, 18 U.S.C. § 116. Appearances have been entered by four AUSAs and three Justice Department attorneys. The government has filed, and then abandoned, three appeals of rulings dismissing the core charges. Obviously, the government is heavily invested in

---

[4] *See*
https://www.justice.gov/opa/pr/detroit-emergency-room-doctor-arrested-and-charged-performing-female-genital-mutilation (dated 4-13-17);
https://www.justice.gov/opa/pr/detroit-doctor-and-wife-arrested-and-charged-conspiring-perform-female-genital-mutilation (dated 4-21-17);
https://www.justice.gov/usao-edmi/pr/three-indicted-female-genital-mutilation (dated 4-26-17).

[5] *See, e.g.,*
https://abcnews.go.com/US/detroit-doctor-charged-1st-statute-criminalizing-female-genital/story?id=46777751 (dated 4-13-17);
https://www.washingtonpost.com/news/post-nation/wp/2017/04/13/detroit-area-doctor-charged-with-performing-genital-mutilation-on-girls/ (dated 4-13-17);
https://www.forbes.com/sites/ritarubin/2017/04/14/doctor-charged-with-female-genital-mutilation-has-published-research-overseen-residents/?sh=43cc59586224 (dated 4-14-17);
https://www.cnn.com/2017/04/22/health/detroit-genital-mutilation-charges/index.html (dated 4-24-17);
https://www.bbc.com/news/world-us-canada-39597062 (dated 4-14-17);
https://timesofindia.indiatimes.com/nri/us-canada-news/indian-doctor-charged-with-genital-mutilation-on-girls-in-us/articleshow/58176376.cms (dated 4-14-17);
https://www.dw.com/en/us-doctor-charged-with-performing-female-genital-mutilation/a-38430928 (dated 4-14-17).

this case.

In addition to demonstrating the government's stake in deterring them from seeking dismissal of the charges, defendants have also shown that the prosecutor's conduct in this matter has been unreasonable.  The charges in the fourth superseding indictment (the fifth indictment in four years) are unreasonable for a number of reasons.  First, all of these charges could have been brought years ago, as they are based on the same facts the government has possessed since April 2017. Count One charges defendants with conspiring to make false statements, in violation of § 371.[6]  In the original indictment, and in the first, second, and third superseding indictments, defendants were charged with violating § 371 by conspiring to commit FGM.  Four years into the case, the government has now recharacterized this charge, claiming that defendants conspired to make false statements about whether FGM was being carried out within their community.  This new charge could have been brought at the inception of the case, but it was not brought until after defendants succeeded in having the FGM and the § 2423 charges dismissed.

The prosecutor also acted unreasonably in reintroducing the § 1001 charge (Count Two of the fourth superseding indictment).  The government charged defendants Nagarwala and Fakhruddin Attar with violating this statute in the original and first superseding indictments (filed

---

[6] Section 371, entitled Conspiracy to commit offense or to defraud United States, states in relevant part:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

in April and June 2017, respectively), but it omitted this charge in the second and third superseding

indictments (filed in September 2017 and September 2018, respectively).  After being absent from

the case for three and one-half years, the charge now reappears in the fourth superseding indictment

(filed in March 2021) against defendants Nagarwala, Farida Attar, and Dahodwala, based on the

same alleged false statement to law enforcement that underlay the § 1001 charge against Nagarwala

initially, namely, that FGM (or "*khatna*") was not being performed in the community.  *Cf.*

Indictment ¶ 29 and First Superseding Indictment ¶ 35 *with* Fourth Superseding Indictment ¶ 23.

Just like the new § 371 charge, the new § 1001 charge could have been brought all along, but it was

not brought until after defendants succeeded in having the FGM charges and the § 2423 charges

dismissed.

> For similar reasons, the prosecutor acted unreasonably in bringing the new § 1512

charges, presented in Counts Three, Four, and Five of the Fourth Superseding Indictment. The four

defendants named in the most recent indictment were charged in a single count in the second and

third superseding indictments with violating § 1512(k) by conspiring to hinder and prevent "the

communication to law enforcement officers and a judge of the United States of information relating

to the commission or possible commission of a federal offense" and "to corruptly obstruct, influence

and impede an official proceeding."   Second Superseding Indictment ¶ 45, Third Superseding

Indictment ¶ 57.  In the fourth superseding indictment the government now alleges three separate

§ 1512 violations.  Count Three alleges that defendants Nagarwala and the Attars violated § 1512(k)

("Conspiracy to Tamper with a Witness") in that they agreed to threaten "each other and other

members of the Community . . . with the intent to hinder, delay, and prevent the communication to

a law enforcement officer . . . of information relating to the commission and possible commission

of a Federal offense, namely FGM, in violation of 18 U.S.C. § 1512(b)(3)." Fourth Superseding Indictment ¶ 25. Nagarwala and the Attars allegedly told others, including Dahodwala, to give false or misleading statements to law enforcement officers "regarding whether *khatna* took place, or was, in fact, taking place, or was performed by Jumana Nagarwala." *Id.* ¶ 28. Count Four alleges that Nagarwala and Farida Attar violated § 1512(b)(3) ("Tampering with a Witness") by telling Dahodwala to give false or misleading statements to law enforcement officers who were involved in this investigation. *See id.* ¶ 30. And Count Five alleges that Nagarwala and the Attars violated § 1512(b)(3) by "instruct[ing] Community Member-2 to tell Community Member-1 to make false or misleading statements to law enforcement officers who were involved in this investigation. *Id.* ¶ 32.

The government has never previously alleged that defendants engaged in witness tampering, but now it does so in three new counts (one conspiracy count and two substantive counts). Just like the new § 371 and § 1001 charges, the new § 1512 charges could have been brought initially, as they are based on the same information the government has possessed since April 2017. Yet these witness tampering charges were not brought until after defendants succeeded in having the FGM charges and the § 2423 charges dismissed – and after defendants filed three meritorious motions to dismiss the § 1512(k) charge in the third superseding indictment.

Under the circumstances of this case, the timing of the government's decision to bring the new § 371, § 1001, and § 1512 charges in the fourth superseding indictment is clearly unreasonable and indicative of vindictiveness. Additionally, it is unreasonable for the prosecutor to bring any of these charges in light of the Court's ruling that the FGM statute is unconstitutional. All of the charges presented in the fourth superseding indictment require a showing that defendants

committed, or conspired to commit, a federal offense.[7]  The purported federal offense in this case is FGM.[8]  It is alleged that defendants falsely told law enforcement that FGM was not being performed in their community and that they conspired to, and did, tell community members to give law enforcement the same misinformation.  But telling such lies, conspiring to do so, and coercing others to do so was not a crime during the time frame at issue (May 2016 - April 2017) because the statute making FGM a federal offense, § 116(a), was unconstitutional.  The government argues that FGM was a federal offense until November 2018 when the Court declared this statute unconstitutional, and therefore defendants may still be charged with lying to investigators and otherwise interfering with the investigation in 2016 and 2017.  The Court rejects this argument.  The Court's ruling that Congress lacked the authority to pass § 116(a) means that the statute was void ab initio.  "An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords

---

[7] Section 371 makes is a crime for "two or more persons [to] conspire . . . to commit any offense against the United States."  Section 1001(a) makes it a crime to give false statements "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States."  And § 1512(b)(3) prohibits witness tampering that interferes with the "communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense."

[8] This is apparent from the fourth superseding indictment itself.  The § 371 charge (Count One) alleges that the purpose of the conspiracy was to make false statements to law enforcement "regarding Jumana Nagarwala performing *khatna* and *khatna* being performed in the Community."  Fourth Superseding Indictment ¶ 8.  The § 1001 charge (Count Two) alleges that defendant Dahodwala told an FBI agent "that *khatna* was not performed in the Community."  *Id.* ¶ 23.  And the § 1512 charges (Counts Three, Four, and Five) allege that defendants conspired to, and did, tamper with witnesses to interfere with the investigation "relating to the commission and possible commission of a Federal offense, namely FGM," *id.* ¶ 26, "regarding whether *khatna* took place . . . or was performed by Jumana Nagarwala," *id.* ¶¶ 30, 32.  The government states that "at the time of the obstruction, the government was investigating additional federal offenses, including 18 U.S.C. §§ 2423(a), (b)," Pl.'s Resp. Br. at 16, but this is not what is alleged in the fourth superseding indictment.  Further, the Court has dismissed the § 2423 charges.

no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." *Norton v. Shelby Cnty.*, 118 U.S. 425, 442 (1886). This means that defendants cannot be prosecuted for violating § 116(a) by committing or conspiring to commit FGM. Apparently the government recognizes this, as it has omitted this charge from the fourth superseding indictment. And it also means that defendants cannot be prosecuted for lying to investigators, conspiring to lie to investigators, or coercing witnesses to lie to investigators about whether they were committing FGM or whether FGM was being performed in the community because, at that time, FGM was not a federal offense.[9] It is plainly unreasonable for the prosecutor to bring any charges that rely on an unconstitutional statute to provide the required underlying federal offense.

It was also unreasonable for the prosecutor to charge defendants under § 2423. The initial, first superseding, and second superseding indictments charged defendants Nagarwala and Fakhruddin Attar with violating § 2423(a), (e) ("Conspiracy to Transport Minor with  Intent to Engage in Criminal Sexual Activity") although no reasonable argument could be made that FGM qualifies as "criminal sexual activity." *See Nagarwala*, 2018 WL 405122 (dismissing § 2423(a), (e) charge). The government responded to the dismissal of this charge by replacing it in the third superseding indictment with a charge against defendant Nagarwala under § 2423(b), (e) ("Conspiracy to Travel with Intent to Engage in Illicit Sexual Conduct") although no reasonable argument could be made that this statute applied to her in light of the circumstances alleged. *See*

---

[9] The government asserts that "FGM remains a federal offense. In response to this Court's ruling, Congress passed the Strengthening the Opposition to Female Genital Mutilation Act of 2020.' H.R. 6100, Section 5. See 18 U.S.C. § 116(d)." Pl.'s Resp. Br. at 16 n.1. This Act was signed into law in January 2021. This does nothing to undermine the Court's unchallenged ruling that the version of § 116 under which defendants were charged is unconstitutional. Even if FGM is a federal offense now, it was not a federal offence when defendants allegedly conspired to hide their activities by lying to law enforcement and coercing witnesses in 2016 and 2017. Statutes cannot be applied retroactively.

*Nagarwala*, 438 F. Supp. 3d 821 (dismissing § 2423(b), (e) charge).  As noted above, while the government appealed both of these decisions, it quickly dismissed both appeals without explanation.  *See United States v. Nagarwala*, No. 18-1156 (6th Cir.) (document 9, filed Mar. 30, 2018); *United States v. Nagarwala*, No. 20-1308 (6th Cir.) (document 10, filed June 3, 2020).  This strongly suggests that the government itself had no confidence in the legitimacy of these charges.

        The facts discussed above give rise to "a reasonable likelihood of vindictiveness." *Bragan v. Poindexter*, 249 F.3d 476, 481 (6th Cir. 2001).  The Court "presume[s] an improper vindictive motive," *LaDeau*, 734 F.3d at 566, based on (1) the prosecutor's stake in deterring defendants from seeking the dismissal of the charges and (2) the prosecutor's unreasonable conduct. Therefore, the government now "bears the burden of rebutting the presumption with objective, on-the-record explanations such as governmental discovery of previously unknown evidence or previous legal impossibility."  *Id.*  The government has not met this burden.  The charges in the fourth superseding indictment are not based on new evidence, and no "legal impossibility" prevented the government from bringing these charges at the inception of the case.  The government does not contend that "the prosecutor's assessment of the proper extent of prosecution [did] not . . . crystallize[ ]" until now, *Goodwin*, 457 U.S. at 381, or that the prosecutor "needed time to unravel" the facts of the case.  *United States v. Suarez*, 263 F.3d 468, 480 (6th Cir. 2001).  Nor have new prosecutors entered the case, as in *Goodwin*.  Nor are the new charges the result of failed plea negotiations, as in *Bordenkircher*.  Nor was the most recent indictment obtained in order to correct a technical failure in the prior indictment's allegations, as in *Moon*.

        The only explanation the government offers is that the fourth superseding indictment provides more details to explain the basis for the charges, purportedly for the benefit of the

defendants, the Court, and the jury.  But this does not explain why the § 371 charge, which now alleges, for the first time, that defendants conspired to make false statements, was brought after defendants obtained the dismissal of the FGM charges.  It does not explain why the § 1512 charges, which now allege, for the first time, that defendants conspired to, and did, tamper with witnesses, were brought after defendants filed compelling motions to dismiss the earlier-filed § 1512 charges.  And it does not explain why the § 1001 charge, which was omitted from the second and third superseding indictments, has reappeared years later in the fourth superseding indictment against defendant Nagarwala (who was originally charged under this statute) and defendants Farida Attar and Dahodwala (who were never previously charged under this statute).

The government has failed to rebut the presumption of vindictiveness.  Therefore, "the presumption stands and the court must find that the prosecutor acted vindictively."  *Bragan*, 249 F.3d at 482.  "The remedy is dismissal of the charges or other appropriate remedies."  *Id.*  In the present case, the appropriate remedy is the dismissal of the fourth superseding indictment.

### Conclusion

As the Sixth Circuit has noted, "the vindictive prosecution doctrine is designed to prevent retaliation for the assertion of protected rights."  *Suarez*, 263 F.3d at 482.  For the reasons stated above, the Court concludes that the prosecution in this matter is vindictive.  The government obtained the fourth superseding indictment, which asserts new and additional charges, in retaliation for defendants' past success in having other charges dismissed.  Such vindictive or retaliatory prosecution "is a due process violation 'of the most basic sort.'"  *Goodwin*, 457 U.S. at 372 (quoting *Bordenkircher*, 434 U.S. at 363).  Accordingly,

IT IS ORDERED that defendants' motion to dismiss the fourth superseding indictment (ECF No. 487) is granted.

IT IS FURTHER ORDERED that all remaining motions are denied as moot (325, 339, 355, 447,469, 483).

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
Dated: September 28, 2021                    SENIOR UNITED STATES DISTRICT JUDGE
Detroit, Michigan

26